U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

DEC – 5 2007

CLERK, U.S. DISTRICT COURT
By _____
      Deputy

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

KIRK D. JENKINS,

    Plaintiff,

v.                        Civil Action No. _____

NATIONAL BOARD OF MEDICAL
EXAMINERS,

    Defendant.

**2 - 0 7 C V - 2 6 3 - J**

## ORIGINAL COMPLAINT FOR EMERGENCY INJUNCTIVE RELIEF AND DEMAND FOR JURY TRIAL

**To the Honorable United States District Court Judge, Mary Lou Robinson:**

Plaintiff, Kirk D. Jenkins ("Jenkins"), files his Original Complaint for Emergency Injunctive Relief and Demand for Jury Trial against Defendant, National Board of Medical Examiners ("NBME") and respectfully states the following.

### NATURE OF THE ACTION

1.      This is an action for emergency, preliminary and permanent injunctive relief, and for, attorneys' fees and costs incurred in bringing this action based on NBME's refusal to provide reasonable accommodations to Jenkins pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101, et seq. Jenkins is a medical student at the University of Louisville School of Medicine ("ULSOM"), and is scheduled to take the U. S. Medical Licensing Examination ("USMLE") Step 1 on *December 18, 2007 in Amarillo, Texas*. The NBME has illegally refused and is illegally refusing to accommodate Jenkins' learning disability by refusing to provide Jenkins additional time to take the USMLE Step 1. Jenkins seeks a preliminary and permanent injunction prohibiting the NBME from continuing its violation of his ADA rights and

compelling NBME to allow Jenkins to take the examination with appropriate accommodations. NBME's actions are in violation of the ADA, including 42 U.S.C. § 12189.

## PARTIES

2.     Jenkins has completed the second year of instruction at ULSOM. Jenkins, who has been diagnosed with a learning disability, intends to take the USMLE Step 1 on December 18, 2007, in Amarillo, Texas. Jenkins' learning disability impairs his reading ability to the point that his competence level is below that expected in comparison to most people and is a disability within the meaning of the ADA. 42 USC §12102(2).

3.     NBME is a District of Columbia non-profit organization headquartered in Philadelphia, Pennsylvania. NBME administers the USMLE, a three-step examination, the successful completion of which is required for medical licensure in the United States. Additionally, the level of performance on the USMLE is a primary determinant of the quality of institution for which a candidate will be accepted for residency training. Defendant has previously administered and will administer the USMLE Step 1 within the boundaries of this judicial district in December 2007.

4.     NBME engages in business in Texas and this judicial district and this action arises from those business activities. NBME, however, does not maintain a regular place of business in this state or this judicial district and does not have a designated agent for services of process in this state. Accordingly, under Texas Civil Practice and Remedies Code of 17.044(b), the Texas Secretary of State is a proper agent for service of process on NBME. NBME's principal place of business is 3750 Market St., Philadelphia, Pennsylvania 19104 and its registered agent in its state of incorporation is CT Corporation System 1025 Vermont Ave., N.W., Washington, D.C. 20005.

## SUBJECT MATTER JURISDICTION AND VENUE

5.      This action arises under the laws of the United States, specifically the ADA, and accordingly, this Court has jurisdiction pursuant to 28 U.S.C. §1331.  This Court also has jurisdiction pursuant to 42 U.S.C. §12188(a)(1), which incorporates the provisions of 42 U.S.C. § 2000a-3(a), providing for civil actions in this Court by any person who is being subjected to discrimination on the basis of disability in violation of Title III of the ADA.

6.      Venue is proper in this Court pursuant to 28 U.S.C. §1391, as NBME is doing business in this judicial district by virtue of administering the USMLE Step 1 in this district, and is denying Jenkins the rights he is afforded under the ADA in this judicial district.

## FACTUAL ALLEGATIONS

7.      Jenkins has completed his second year of instruction at the ULSOM. As part of his preparation for the third year of medical school, Jenkins is required to take the USMLE Step 1. He has applied for and been given a scheduling permit allowing him to take the exam on December 18, 2007, in Amarillo.  Jenkins is scheduled to begin rotations January 2, 2008.  If he has not successfully completed the Step 1 by that time, Jenkins will not be allowed to join his classmates when rotations begin.  Such an outcome would likely end Jenkins' medical education.

8.      Jenkins' learning disabilities were evident since preschool, were formally diagnosed in the 3rd grade, and additional and repeat testing by clinical psychologists in 1999, 2003 and 2007, document and confirm his learning disabilities.  Specifically:

9.      **PRESCHOOL through KINDERGARTEN:**      Jenkins' teacher noted that he had "difficulty learning names of letters and associating the letters with their sounds, when all of his other skills were above average."  The other children in the classroom were "reading at a higher level" than Jenkins, and the teacher worked "one-on-one" with Jenkins, "often during

recess and even after school." Throughout this process, Jenkins' teacher noted that he "showed additional traits of dyslexia – difficulty decoding single words, inaccurate and labored oral reading, slow reading, and difficulty learning the letters of the alphabet and names of numbers." [1]

10.     **ELEMENTARY SCHOOL:**     Jenkins was referred for a learning disability [2] assessment due to experiencing difficulties and frustrations with the academics of written language, spelling and reading.    Accordingly, he was tested and evaluated by the school psychologist, Dr. Michael Gontarz.    The battery of tests administered, and the results are attached; briefly, Dr. Gontarz found that Jenkins "shows significant spelling weaknesses and some reading decoding problems, but *compensates in the latter when he must comprehend what is read.*"   Dr. Gontarz found that Jenkins "is in need of one to one, small group instruction in the area of spelling."[3]

11.     Dr. Gontarz was a part of a Multidisciplinary Team at Jenkins' elementary school whose purpose was to determine Jenkins' exceptional educational needs, if any.    Other team members included the school principal, several of Jenkins' teachers and the school's Learning Disability Specialists, Lori TeeGarden.

12.     The consensus of the Multidisciplinary Team, which, again, included Jenkins' teachers, the school psychologist and the school learning disability specialist, was that Jenkins "*did not possess the abilities to be a reader*" and that "he was not proficient in the components of phonemic/phonics, fluency and sight work vocabulary.    The Multidisciplinary Team agreed that Jenkins "was in need of one-to-one instruction to best meet his educational needs in reading

---

[1] Affidavit of Carol Blevins.  Attached as Exhibit 1.
[2] Affidavit of Michael Gontarz.  Attached as Exhibit 2.
[3] Dr. Gontarz's Psychologist's Report is attached to the D.C. Everest Area School District's business records affidavit.  Attached as Exhibit 3.

and spelling" and that he *could only remain in a regular reading class if provided* *"accommodations and extensive support services."*[4]

13.     Likewise, Jenkins' fourth grade teacher, who was a part of the Multidisciplinary Team, also recognized Jenkins struggling in the area of language arts and that, with respect to reading, he *"still took extra processing time."* The teacher allowed Jenkins extra time for completion of tests.[5]

14.     **TENTH GRADE:**   Jenkins' tenth grade chemistry teacher noted that Jenkins would stay after class to finish his tests. *"He did well on tests. It just took him a long time to finish them."*[6]

15.     **TWELFTH GRADE AND THE ACT EXAM:**   During   his   senior   year, Jenkins sat for the ACT Exam three times under normal time constraints, and received three low scores. Puzzled by the poor performance, the Jenkins family sought the assistance of a clinical psychologist.

16.     Jenkins was evaluated by David R. Holmes, Ph.D. for complications related to his learning style.   The battery of tests Dr. Holmes administered is set forth in his attached Psychological Report; briefly, with respect to Jenkins' reading comprehension, Dr. Holmes recommended various strategies to improve Jenkins' reading, including *"slow down the speed"* and *"seek extra time for tests involving significant elements of reading."*[7]

17.     The Dr. Holmes Report and the Dr. Gontarz Report supported Jenkins' request for extra time on a fourth try at the ACT Exam.   With the accommodation of extra time, Jenkins'

---

[4] Affidavit of Lori TeeGarden.  Attached as Exhibit 4.  *See also* the D.C. Everest Area School District's business records affidavit, which attaches the Multidisciplinary Team Report and Jenkins' Individualized Education Program.  Attached as Exhibit 3.
[5] Affidavit of Randall B. Colton.  Attached as Exhibit 5.
[6] Affidavit of William Heeren.  Attached as Exhibit 6.
[7] The Business Record Affidavit of David R. Holmes, Ph.D.  Attached as Exhibit 7.

fourth ACT score was considerably higher than the three previous scores. ***Specifically, Jenkins'***
***Reading score on the ACT Exam jumped from an unaccommodated 16 to an accommodated***
***35 (64th percentile to 99th percentile).***

18. **THE UNIVERSITY OF WISCONSIN-MADISON:** Jenkins completed his
undergraduate studies at the University of Wisconsin-Madison. While at the university, Jenkins,
based upon his documented disability, received the following formal accommodations:
***"extended time on tests with up to time and a half,*** access to note-takers as needed, and access
to a dictionary when taking a test."[8]

19. **THE MCAT:** In his junior year at the University of Wisconsin-Madison, Jenkins
was again tested and evaluated by Dr. Holmes. The battery of tests administered and the results
are attached; briefly, Dr. Holmes found that Jenkins "reading comprehension score was in the 4[th]
quartile while his reading score was in the 1[st] quartile. This is an atypical combination ***such that***
***his reading speed is far below average while his comprehension is above average."*** ***"Any task***
***requiring reading with speed produced his lowest scores."*** Additionally, Dr. Holmes found that
Jenkins ***"continues to be in need of accommodations related to the need for longer time for***
***reading,"*** and "the nature of [Jenkins'] intracognitive discrepancies suggests that ***extended time***
***be allowed on timed tasks as an appropriate intervention.***" Jenkins applied for and received the
accommodations of ***"time and one-half with seating in a separate room"*** for the MCAT exam.[9]

20. **ULSOM:** Following his undergraduate studies, Jenkins sought admission at
the University Of Louisville School Of Medicine, where he has completed his second year and
anticipates commencing his third year following the Step 1 Exam. While at ULSOM, Jenkins
received formal accommodations on exams. Specifically, "as a result of [Jenkins'] definitive

---

[8] Affidavit of Mark Leddy, Ph.D., CCC-SLP and Affidavit of Linda Gunkel. Attached as Exhibit 8.
[9] Business Records Affidavit of the Association of American Medical Colleges. Attached as Exhibit 9.

diagnosis [of dyslexia] he has always been supplied with accommodations *(normally time and a half and a quiet environment to take the examinations)."*[10] *"EXTENDED TEST TIME: Time and a half on written exams"*[11]

21.     **USMLE Step 1/THE FIRST REQUEST FOR ACCOMMODATION:** In anticipation of the Step 1 Exam., Jenkins wrote to the NBME requesting the accommodation of time and one-half on the exam.  In support of his request, Jenkins advised NBME that he was given formal accommodations of extra time on exams by (1) ACT Universal Testing (the not-for-profit organization that administers the ACT); (2) the Association of American Medical Colleges (the not-for-profit organization that administers the MCAT); (3) The University of Wisconsin-Madison; and (4) The University of Louisville School of Medicine.  Jenkins also advised NBME that he had been diagnosed with dyslexia in the third grade which resulted in a formal Independent Education Program (again, providing accommodations commensurate with Jenkins' disability), and that he had received extra time on exams throughout grade school and high school.  Jenkins also enclosed the 1991 Dr. Gontarz Psychologist's Report, the 1999 Dr. Holmes Psychologist's Report, and the 2003 Dr. Holmes reevaluation and the related reports.

22.     On December 7, 2006, NBME wrote to Jenkins and advised him that the information he had submitted was incomplete and asked him to "submit documentation of a current, comprehensive evaluation by a qualified diagnostician to demonstrate [Jenkins'] current functioning."  NBME specifically admonished Jenkins that the evaluator "should review and discuss the *Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition (DSM-IV-TR)* and the extent to which [Jenkins meets] the diagnostic criteria for each diagnosis."

---

[10] Affidavit of David L. Wiegman.  Attached as Exhibit 10.
[11] Business Records Affidavit of ULSOM.  Attached as Exhibit 11.

23. **THE 2007 TESTING AND EVALUATION:** Pursuant to NBME's request, Jenkins was tested and evaluated by John M. Lacy, PhD., HSSP, a licensed clinical psychologist. The battery of tests administered by Dr. Lacy and the results and findings are set forth in his attached Psychoeducational Report. Dr. Lacy specifically diagnosed Jenkins as meeting the *DSM-IV* criteria for the following diagnoses: (1) Reading Disorder (315.00); Disorder of Written Expression (315.20); and Learning Disorder Not Otherwise Specified (i.e., low academic fluency)(315.90). With respect to the effect of such diagnoses, Dr. Lacy explained that, *"As a lengthy test with a strict time limit that is presented in text form, the USMLE places Mr. Jenkins at a disadvantage relative to his knowledge of the material in question as a result of his low academic fluency and his reading decoding and written language disabilities."* Dr. Lacy recommended that Jenkins "receive 50% additional time on the USMLE Step 1," thereby allowing Jenkins to be tested on his medical and science knowledge and not his disability.[12] Jenkins provided the Dr. Lacy Psychoeducational Report to NBME.

24. **NBME's FIRST DENIAL OF ACCOMODATIONS:** On May 18, 2007, NBME advised Jenkins that it was unable to provide Jenkins with the requested accommodation of extra time for the Step 1 Exam. NMBE denied the requested accommodation notwithstanding the reports of every psychologist who had ever evaluated Jenkins, and with no testing or evaluation of its own.

25. **USMLE Step 1/THE SECOND REQUEST FOR ACCOMMODATION:** On June 18, 2007, Jenkins reapplied for the accommodation of additional time on the Step 1 Exam.

26. **NBME'S SECOND DENIAL OF ACCOMODATIONS:** On August 29, 2007, NBME again denied Jenkins the accommodation of extra time, claiming that Jenkins is not

---

[12] Business Record Affidavit of John M. Lacy, Ph.D., HSPP, which attaches his Psychoeducational Report of Jenkins. Attached as Exhibit 12.

'substantially limited in a major life activity relative to most people." Again, NBME made this decision without ever having met, tested or evaluated Jenkins.

27.    **SUMMARY OF "HANDS-ON," "EYE-TO-EYE" PROFESSIONALS, TESTS AND RESULTS:**

**Dr. Michael Gontarz – January 1991**

    a.  Child Skills Checklist
    b.  Child Behavior Checklist
    c.  A.D.H.D. Rating Scale
    d.  Wechsler Intelligence Scale for Children-Revised
    e.  Coffman Tests of Educational Achievement
    f.  Test of Auditorial Perceptual Skills
    g.  Beery Developmental Test of Visual-Motor Integration
    h.  Culture Free Self-Esteem Inventory

**David R. Holmes, PhD. – October 1999**

    a.  Wechsler Adult Intelligence Scale-3rd Edition
    b.  Wechsler Individual Achievement Test
    c.  Outcome Questionnaire
    d.  Thurstone Word Fluency
    e.  Beck Depression Inventory-II

**David R. Holmes, PhD. – September 2003**

    a.  Wechsler Adult Intelligence Scale-III
    b.  DSM-4 Diagnosis-Axis 1: 315.90 Learning Disorder NOS (Principal)
    c.  Wechsler Individual Achievement Test-II

**John M. Lacy, PhD. HSPP – January 2007**

    a.  Wecshler Adult Intelligence Sale – III
    b.  Woodcock Johnson III[13]

---

[13] Before granting a time accommodation on the STEP 1 Exam, NBME requires a learning disorder diagnosis and a current (less than three years old) assessment of an applicant's learning disability. The Woodcock Johnson III battery of tests is accepted by the board for this assessment and a DSM-IV 315.00 diagnosis is what is required. Dr. Lacy's evaluation of Jenkins was done at the insistence of NBME, and with respect to the Woodcock Johnson III, Dr. Lacy found that Jenkins reading fluency, math fluency, and spelling skills lie significantly below his expected achievement level and constitute learning disabilities. Again, Dr. Lacy made the following DSM-IV diagnoses: (1) reading disorder (315.00); (2) disorder of written expression (315.20); and (3) learning disorder not otherwise specified (i.e., low academic fluency (315.90)

**The various foregoing tests measured and evaluated, among other things, Jenkins':**

a. Verbal IQ
b. Performance IQ
c. Full Scale IQ
d. Verbal Conceptual
e. Perceptual Organization
f. Working Memory
g. Processing Speed
h. Basic Reading
i. Mathematics Reasoning
j. Spelling
k. Reading Comprehension
l. Numerical Operations
m. Listening Comprehension
n. Oral Expression
o. Reading Composite
p. Mathematics Composite
q. Language Composite
r. Total Composite
s. Letter-Word Identification
t. Passage Comprehension
u. Reading Fluency
v. Broad Reading
w. Calculation
x. Mathematics Fluency
y. Spelling
z. Writing Samples
aa. Writing Fluency
bb. Broad Written Language
cc. Academic Skills
dd. Academic Fluency

28.     It is absolutely critical to note that all of the foregoing diagnostic tests and evaluations were personally administered by licensed professionals.   In other words, the diagnoses and evaluations were done by professionals who personally, hands-on, eye-to-eye, met with, observed, and tested Jenkins.

29.     **The foregoing myriad of diagnostic tests and evaluations resulted in Jenkins meeting the DSM-IV criteria for the following diagnoses:**

a.     Reading Disorder (315.00)

b.   Disorder of Written Expression (315.2)

c.   Learning Disorder Not Otherwise Specified (i.e., low academic fluency)(315.90)

30.   Dating as far back as 1991, when Jenkins was in the third grade, a team of professionals including a psychologist and a learning disability specialist diagnosed Jenkins with dyslexia. Since then, other professionals and diagnosticians over the years have diagnosed, and continue to diagnose Jenkins with a learning disability that comports with the criteria of the DSM-IV.

31.   Specifically, and covering the years from his third grade in school through the present, Jenkins psychologists, diagnosticians, and other learning disability specialists have consistently noted, among other things:

- Jenkins shows significant spelling weaknesses and some reading decoding problems, but compensates in the later when he must comprehend what is read.

- Jenkins did not possess the abilities to be a reader.

- Jenkins could only remain in a regular reading class if provided accommodations and extensive support services.

- Jenkins took extra processing time when reading.

- Jenkins did well on tests. It just took him a long time to finish them.

- Jenkins needs to slow down the speed of his reading and seek extra time for tests involving significant elements of reading.

- Jenkins should receive formal accommodations on timed tests of up to time and a half.

- Jenkins reading speed is far below average.

- Any tasks requiring reading with speed produces Jenkins lowest scores.

- Extended time should be allowed on all timed tasks for Jenkins as an appropriate intervention.

- Jenkins should receive time and one half with seating in a separate room.

- Jenkins is at a disadvantage relative to his knowledge of the material in question as a result of his low academic fluency and his reading decoding and written language disabilities.[14]

32. **IN SPITE OF NEVER HAVING MET JENKINS, NEVER HAVING TESTED JENKINS AND NEVER HAVING EVALUATED JENKINS, NMBE _IGNORES_ MULTIPLE QUALIFIED PROFESSIONALS, YEARS OF TESTS AND EVALUATIONS, YEARS OF OBSEVATIONS AND, PERHAPS MOST IMPORTANTLY, THE OBJECTIVE AND UNASSAILALBE HISTORY OF JENKINS DISABLITY MANEFESTING WHEN TESTED WHERE READING WAS SUBSTANTIAL AND TIME WAS CONSTRAINED.**

33.. Students at the ULSOM (as in many medical schools in the United States) are requested to take and pass the USMLE Step 1 before starting the third year of medical school. The third year of school consists of "rotations," i.e., medical education through the practical application of the principles learned in the classroom. ULSOM requests Step 1 be taken before the third year begins to avoid interfering with the third year studies. Passing the Step 1 is a prerequisite to completing the third year, obtaining residency admission, and being able to sit for the Step 2 and 3 examinations.

34. The NBME develops and administers the USMLE Step 1 at various test sites and on various dates throughout the United States. The results of each student's scores are reported to that student's medical school.

---

[14] Although Jenkins was not formally diagnosed with a learning disability until the third grade, his preschool and kindergarten teacher noted that he had difficulty learning names of letters and associating the letters with their sounds, and that all the other children in the classroom were reading at a higher level than Jenkins. The kindergarten teacher also noted that Jenkins showed traits of dyslexia, such as difficulty decoding single words, inaccurate in labret or reading, slow reading, and difficultly learning the letters of the alphabet and names of numbers. *See* the Affidavit of Carol Blevins attached as Exhibit 1.

35.     The NBME recognizes the right of disabled persons to accommodations by providing an application on which examinees can request test accommodations for the USMLE Step 1, including accommodations for learning disabilities like those suffered by Jenkins.

36.     Students pay a fee and apply with NBME for an eligibility period (a three month time span) within which to take the Step 1. Exam. Jenkins was original eligibility period was from June 1, 2007 through August 31, 2007. When NBME denied both of his requests for reasonable accommodations, Jenkins paid an extra fee to extend his eligibility period to allow himself time to seek the Court's intervention in protecting his ADA rights. Due to NBME's strict and unyielding rules, if Jenkins does not take the Step 1 Exam on his scheduled date of December 18, 2007, it will be impossible for him to take the exam before his third year rotations begin on January 2, 2008.

37.     The facts establish that Jenkins has definite learning disabilities that substantially limit his major life activities of learning, reading and writing as compared to most people. Under the ADA, Jenkins is entitled to a reasonable accommodation of additional time to take the USMLE Step 1 exam. NBME's refusal to provide Jenkins with an accommodation of extra time for the USMLE Step 1, despite knowing of Jenkins' documented learning disabilities that are protected under the ADA, is a violation of Jenkins' rights under the ADA.

38.     Jenkins will be unable to complete his medical school education in the same manner as his classmates if he does not successfully complete the USMLE Step 1. Moreover, he will be placed at a distinct disadvantage of competing for quality residency positions if he must take the exam without accommodation for his disability. In the worst case scenario, Jenkins's medical career and dream could end if he is unable to pass the USMLE Step 1, due to NBME's refusal to accommodate his disability as required by the ADA.

## COUNT I — VIOLATION OF THE ADA; REQUEST FOR INJUNCTIVE RELIEF

39. Jenkins incorporates by reference the foregoing paragraphs.

40. Jenkins is an individual with a disability as defined by the ADA because he has a mental impairment that substantially limits one or more of his major life functions, namely, learning disabilities that substantially limit his major life functions of learning, reading, and writing. 42 U.S.C. §12102(2)(A).

41. Title III of the ADA (46. U.S.C. § 12189) prohibits discrimination against persons with disabilities in professional examinations such as the USMLE Step 1 as follows:

> Any person that offers examinations or courses related to applications, licensing, certification, or credentialing for secondary or post-secondary education, professional, or trade purposes shall offer such examinations or courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals.

42. The NBME is covered by the ADA pursuant to 42 U.S.C. §12189 in its capacity as the administrator of the USMLE Step 1.

43. Pursuant to 28 C.F.R. § 36.309(b), the NBME must assure that any examination

> is selected and administered so as to best insure that, when the examination is administered to an individual with a disability that impairs sensory, manual or speaking skills, the examination results accurately reflect the individual's aptitude or achievement level or whatever other factors the examination purports to measure, other than reflecting the individual's impaired sensory, manual, or speaking skills.

44. One reasonable accommodation for a disabled person, such as Jenkins, that may be allowed under the ADA is lengthening the time permitted for completing the examination.

45. Jenkins has a learning disability that substantially limits his major life activities of learning, reading and writing. Jenkins' condition, which has been diagnosed through testing,

examination and evaluation by experts in this field, constitutes a disability within the meaning of the ADA.

46.     Under the ADA, a disability is defined, in part, as a physical or mental impairment that substantially limits one or more major life activities of an individual. 42 U.S.C. § 12102(2).   Under the authority of 42 U.S.C. § 12134, the Department of Justice has promulgated regulations (28 CFR § 35.104) that include "learning" and "work" within the definition of major life activities.  The major life activity of learning also includes "reading" and "writing" as activities protected by the ADA.  The "substantially limited" standard for the major life activity of learning, reading, or writing, is established when "the individual's important life activities are restricted as to the condition, manner, or duration under which they can be performed in comparison to most people."  28 CFR, pt. 36, App. B.

47.     As noted above, Jenkins has a learning disability that substantially impairs his ability to read and process the written word.  His disability precludes him from learning, reading and writing in the same manner and in the same amount of time as most people.  This learning disability substantially limits his activity of learning, reading, and writing, in comparison to most people and certainly in comparison to his peers, other medical students taking the USMLE.

48.     Failure in the taking of the USMLE, necessarily precludes an individual from employment as a medical doctor in the United States.  Successful passing of the USMLE is a prerequisite to licensure to practice medicine in the United States, and the level of performance in the taking of the USMLE is a primary determinant of a candidate's job opportunities for residency.  Thus, Jenkins's entire future livelihood as a medical doctor rests on this exam.

49.     Jenkins made formal written request of NBME for reasonable accommodation for his disability in connection with taking the USMLE Step 1, i.e., time and one-half to take the

exam, an accommodation NBME has made to some people who have requested the accommodation. Such accommodations are consistent with the reasonable accommodations, he was provided to take the ACT, the formal accommodations at the University of Wisconsin-Madison, the MCAT for entry into medical school, the formal accommodations at ULSOM, and the formal accommodations he received dating back to the third grade. The NBME has granted similar accommodations to other candidates in the past taking the Step 1 exam.

50.     The NBME's refusal to provide the reasonable test accommodations Jenkins requested for the USMLE Step 1 constitutes an illegal failure to accommodate a disabled person in violation of the ADA.

51.     Jenkins will be irreparably harmed if the NBME continues its illegal refusal to provide him the reasonable test accommodation as requested and unless this Court grants preliminary injunctive relief prohibiting the continued violation of Jenkins' ADA rights and compelling the NBME to provide the requested accommodation, in that (a) Jenkins' medical school career will be placed on hold because a passing score on the USMLE Step 1 is a prerequisite to continuing his medical school education; (b) given his history with prior examinations, Jenkins is justifiably concerned that he will not pass the USMLE Step 1 without the additional extra time accommodation to which he is entitled under the ADA; (c) Jenkins' opportunity to engage in his career of choice is effectively on hold until the NBME is compelled to comply with the ADA; (d) Jenkins will be unable to continue the same pace of his medical school career as his peers if he is unable to pass the USMLE Step 1 at this time; (e) requiring Jenkins to take the USMLE Step 1 without accommodation puts him at distinct disadvantage given his disability; (f) reduced performance on the USMLE Step 1 as a result of not receiving accommodation significantly reduces Jenkins' future residency and professional career options;

and (g) Jenkins faces a future expulsion proceeding under ULSOM's policy if he takes and fails to pass the USMLE Step 1 in a timely manner.

52.     The NBME will not be harmed if the Court grants the requested injunctive relief. Thus, the balancing of harm favors granting the requested injunctive relief.

53.     The public interest will be served by granting the requested injunctive relief. The ADA was enacted as a matter of public policy to ensure that disabled persons are treated fairly and provided with equal opportunities to those persons in the community without disabilities. The public interest will not be served by allowing the NBME to continue its unlawful refusal to provide Jenkins with the ADA accommodations to which he is justly entitled.

54.     As a result of the NBME's violation of the ADA, Jenkins suffered or will suffer great injury, including, but not limited to, lost employment opportunities, out-of-pocket pecuniary losses, and severe emotional distress and anguish.

55.     The NBME in denying Jenkins' for reasonable accommodation violated the ADA and has done so while acting maliciously or with reckless indifference for Jenkins' ADA rights.

56.     Accordingly, under the ADA, Jenkins is entitled to and hereby requests entry of a preliminary injunction directing the NBME immediately to cease and desist from its refusal to accommodate Jenkins' requests for accommodation on the USMLE Step 1 and ordering that the NBME immediately comply with the ADA by allowing Jenkins the requested accommodation of one and one-half times the standard time to take the USMLE Step 1.

57.     Further, Jenkins is entitled to and hereby requests that the Court enter a permanent injunction directing that NBME immediately to cease and desist its refusal to accommodate Jenkins' request for an accommodation on the USMLE Step 1 and any future USMLE Step examinations to be taken by Jenkins and that the NBME comply with the ADA by providing

Jenkins' requested accommodation with regard to the USMLE Step 1 and future USMLE examinations for which Jenkins is otherwise entitled to sit and for which he otherwise makes proper application.

## COUNT II - REQUEST FOR ATTORNEY'S FEES

58. Jenkins incorporates by reference the foregoing paragraphs.

59. 42 U.S.C. § 12188(a)(1), incorporates into Title III of the ADA the remedies and procedures set forth in 42 U.S.C. § 2000a-3(a) including the right to recovery of reasonable attorney's fees, and costs and expenses incurred in bringing this claim under the ADA. Jenkins is entitled to recovery and, hereby, does request recovery of all reasonable attorney's fees, costs, and expenses incurred in the bringing and prosecution of this action.

## JURY DEMAND

60. Jenkins hereby demands a trial by jury for all issues in this case that may be triable by a jury of his peers.

WHEREFORE, PREMISES CONSIDERED, Jenkins requests that this Court grant judgment in his favor and against NBME as follows:

a. enter a preliminary injunction directing that the NBME immediately cease and desist from its refusal to accommodate Jenkins' request for reasonable accommodations on the USMLE Step 1 examination and ordering that the NBME immediately comply with the ADA by allowing Jenkins the requested accommodation of one and one-half times the standard time in which to take the USMLE Step 1 examination;

b. order NBME to appear on the date and time affixed by this Court to show cause, if any there be, why a preliminary injunction as prayed for above, should not be issued;

c.    enter judgment in the form of a permanent injunctive order against NBME directing NBME to immediately cease and desist from its refusal to accommodate Jenkins' request for accommodation on the USMLE Step 1 examination and any future USMLE Step examinations for which Jenkins is otherwise entitled to sit and for which he has made proper application and ordering NBME to comply with the ADA by allowing Jenkins the requested accommodation of one and one-half times the standard time to take any of the USMLE Step examinations;

d.    enter judgment against NBME awarding such compensatory damages as may be proven by Jenkins and to which he is entitled;

e.    enter judgment against the NBME awarding Jenkins recovery of his reasonable attorney's fees, costs and expenses incurred in bringing and prosecuting this litigation; and

f.    awarding such other and further relief as may be appropriate, in law or in equity, to which Jenkins may otherwise by entitled.

Respectfully submitted,

Vincent E. Nowak, SBOT# 15121550
MULLIN HOARD & BROWN, LLP
500 S. Taylor, Suite 800
P. O. Box 31656
Amarillo, Texas 79120-1656
806.372.5050
806.371.6230 (Fax)

_____
Vincent E. Nowak
*Attorneys for Plaintiff*

# **VERIFICATION**

STATE OF Kentucky §
                   §
COUNTY OF Jefferson §

     BEFORE ME, the undersigned notary public, on this day personally appeared Kirk D.

Jenkins, who, after being duly sworn, stated under oath that he the plaintiff in this action, that he

has read Plaintiff's Original Complaint for Emergency Injunction Relief and Demand for Jury

Trial, and that every factual statement contained in the complaint is within his personal

knowledge and is true and correct.

                                       Kirk D. Jenkins

     SUBSCRIBED AND SWORN to before me on this the __5__ day of December 2007.

                         Notary Public, State of _Kentucky_

> KIMBERLY S. HOLSCLAW
> Notary Public-State at Large
> KENTUCKY
> My Commission Expires October 05, 2009

Original Complaint and Demand for Jury Trial
Page 20
                             C:\Documents and Settings\Kirk Jenkins.UNIVERSI-SXZLS8\Loc: