## AFFIDAVIT OF CAROL BLEVINS

STATE OF __WI__ §
§
COUNTY OF __Marathon__ §

Before me, the undersigned notary, on this day personally appeared Carol Blevins, a person whose identify is known to me. After I administered an oath to her, upon her oath she said:

1. My name is Carol Blevins. I am over the age of 18 and otherwise competent to make this affidavit. I have personal knowledge of the facts stated in this affidavit and they are true and correct.

2. I was Kirk Jenkins' teacher in the Montessori School of Wausau, WI, throughout his Preschool and Kindergarten years.

3. Kirk was a well-mannered, thoughtful child who excelled in the learning experience Montessori offers. He showed above average enthusiasm and intelligence in all areas of classroom activities, and was one of the leaders in my class.

4. However, when teaching him beginning reading skills, I began to notice some problems and eventual frustration from him. I questioned why be would have such difficulty learning names of letters and associating the letters with their sounds, when all of his other skills were above average. I subsequently spoke with his parents, and relayed my suspicion that he may have dyslexia. Kirk's parents were very supportive of my findings, and shared with me the fact that other family members were dyslexic. Because dyslexia is hereditary, this helped to confirm my suspicions. His parents and I felt that due to his young age and substantial support from both home and school, we would not have any professional testing done at this point. We decided to work one-on-one with Kirk and provide him with a strong phonic foundation. This

**EXHIBIT 1**

strategy was strongly recommended then and currently even today remains essential for dyslexics learning to read.

5. As Montessori methodology allows for individual student exploration and choice, Kirk was able to spend long periods of time with me learning to read with the Phonics system. He was very aware that other children in the classroom were reading at a higher level than he was. In a Montessori classroom, there are mixed ages. Kirk's best friend in school was one year younger than he, and was quite far ahead of him in the series of phonics books and reading materials that we used. Kirk was extremely frustrated. It took a substantial amount of additional one-on-one work to get him to become willing to combat his impairment. In the one-on-one format only with significant positive reinforcement did he become willing to spend extra time working towards learning to read. This often took place during recess and even after school. I spent individual time with Kirk daily to help him read more fluently. I was also in contact with his mother often, in order to coordinate her efforts to work with him in the home.

6. The combination of intense individual attention at school and at home working on phonemes and decoding helped Kirk realize incremental improvements in reading. I have worked with many young children, some of whom also had learning disabilities or difficulties. The further we progressed, the more apparent it became that Kirk showed additional traits of dyslexia-difficulty decoding single words, inaccurate and labored oral reading, slow reading, and difficulty learning the letters of the alphabet and names of numbers. His progress also reinforced that we had made the right decision to offer additional work in phonologic skills. Understand that Kirk did not suddenly become a good reader; he experienced incremental improvements through the additional reading sessions he and I worked through together that inspired him to continue. After leaving kindergarten his reading fluency was still significantly compromised, yet his

brightness and perseverance allowed enough comprehension that he was not "turned off" from reading and learning.

7.  Meeting Kirk again as a young man, I realize he still has the energy and drive to succeed against great odds. We as educators and life trainers must do all we can to help in this struggle, as it is those who have seen failure and still excel who become the compassionate men and women of our time.

_____
Affiant

SWORN TO and SUBSCRIBED BEFORE ME on this _13_ day of _Nov_____, 2007.

_____
Notary Public in and for the State of
_Wisconsin_

My Commission Expires: _May 30, 2010_



July 6, 2007

NBME Disability Services
3750 Market Street
Philadelphia, PA 19104

To Whom It May Concern,

I was Kirk Jenkins' teacher in the Montessori School of Wausau, WI, throughout his Preschool and Kindergarten years.

Kirk was a well-mannered, thoughtful child who excelled in the learning experience Montessori offers. He showed above average enthusiasm and intelligence in all areas of classroom activities, and was one of the leaders in my class.

However, when teaching him beginning reading skills, I began to notice some problems and eventual frustration from him. I questioned why he would have such difficulty learning names of letters and associating the letters with their sounds, when all of his other skills were above average. I subsequently spoke with his parents, and relayed my suspicion that he may have dyslexia. Kirk's parents were very supportive of my findings, and shared with me the fact that other family members were dyslexic. Because dyslexia is hereditary, this helped to confirm my suspicions. His parents and I felt that due to his young age and substantial support from both home and school, we would not have any professional testing done at this point. We decided to work one-on-one with Kirk and provide him with a strong phonic foundation. This strategy was strongly recommended then and currently even today remains essential for dyslexics learning to read.

As Montessori methodology allows for individual student exploration and choice, Kirk was able to spend long periods of time with me learning to read with the Phonics system. He was very aware that other children in the classroom were reading at a higher level than he was. In a Montessori classroom, there are mixed ages. Kirk's best friend in school was one year younger than he, and was quite far ahead of him in the series of phonics books and reading materials that we used. Kirk was extremely frustrated. It took a substantial amount of additional one-on-one work to get him to become willing to combat his impairment. In the one-on-one format only with significant positive reinforcement did he become willing to spend extra time working towards learning to read. This often took place during recess and even after school. I spent individual time with Kirk daily to help him read more fluently. I was also in contact with his mother often, in order to coordinate her efforts to work with him in the home.

The combination of intense individual attention at school and at home working on phonemes and decoding helped Kirk realize incremental improvements in reading. I have worked with many young children, some of whom also had learning disabilities or difficulties. The further we progressed, the more apparent it became that Kirk showed additional traits of dyslexia—difficulty decoding single words, inaccurate and labored oral reading, slow reading, and difficulty learning the letters of the alphabet and names of

numbers. His progress also reinforced that we had made the right decision to offer additional work in phonologic skills. Understand that Kirk did not suddenly become a good reader; he experienced incremental improvements through the additional reading sessions he and I worked through together that inspired him to continue. After leaving kindergarten his reading fluency was still significantly compromised, yet his brightness and perseverance allowed enough comprehension that he was not "turned off" from reading and learning.

Meeting Kirk again as a young man, I realize he still has the energy and drive to succeed against great odds. We as educators and life trainers must do all we can to help in this struggle, as it is those who have seen failure and still excel who become the compassionate men and women of our time.

Sincerely,

*Carol Blevins*

Carol Blevins
6800 Green Valley Road
Wausau, WI  54401
715-675-3499
zennie1@peoplepc.com

## AFFIDAVIT OF MICHAEL GONTARZ

STATE OF <u>WISCONSIN</u>       §
                               §
COUNTY OF <u>MARATHON</u>      §

Before me, the undersigned notary, on this day personally appeared Michael Gontarz, a person whose identify is known to me. After I administered an oath to him, upon his oath he said:

1.  My name is Michael Gontarz. I am over the age of 18 and otherwise competent to make this affidavit. I have personal knowledge of the facts stated in this affidavit and they are true and correct.

2.  I was the school district psychologist at the time of Kirk's referral for a special education evaluation in 1991 when he was a third grader. The reason for Kirk's referral was that his severe academic problems in spelling, written language, and reading substantially limited his daily progress. State and federal laws at the time of Kirk's evaluation required the IEP (Individual Educational Plan) team to determine whether there was a discrepancy between his expected achievement based upon overall cognitive abilities and his actual achievement functioning.

3.  Kirk's evaluation results clearly indicated severe deficits in written language and spelling and, to some degree, reading. A person's demonstrated superior intelligence does not eliminate his/her eligibility for being considered learning disabled. While Kirk was found to have superior overall intellectual abilities, he was also found to have academic skills that were substantially below (more than 1.5 standard deviations below the mean) what can be expected based upon his cognitive performance. However, just showing a discrepancy between cognitive and functional academic achievement is not the only issue the IEP team considered. In such

**EXHIBIT 2**

cases the IEP team also considers if the student's deficits significantly limit him/her from adequately performing in the classroom. In Kirk's case, the IEP team not only found him to be academically functioning far below expected levels given his excellent cognitive skills, but also found him to be substantially struggling in daily performance.

4. It should also be noted that the entire "IEP team" (not just one evaluator) legally determines a severe learning disability. Kirk's IEP team included a psychologist, a learning disability specialist, a principal, and classroom teachers. Daily classroom performance, evaluation results, developmental history, and medical and family factors are all considered in making such a decision. The particular team that evaluated Kirk's assessment results and made a determination of his eligibility for a severe learning impairment had significant years of experience evaluating and working with children who have learning disabilities. In addition, every educational and clinical psychologist and IEP team who have evaluated Kirk the past 16 years have substantiated the fact that Kirk is indeed learning impaired and in need of learning accommodations.

5. After the 1991 IEP team determined that Kirk did indeed have a learning disability, the team then developed an IEP that specifically provided Kirk special assistance. This special assistance was in the form of direct services for written language and spelling as those were the areas that were most impaired. The main issue with Kirk's learning profile was that he had significantly high intelligence and knowledge, but had severe difficulty fluently and efficiently expressing these skills in daily work. His case is very similar to a person who has super intelligence/cognitive functioning, but who has expressive speech problems. If given ample time, the person with the speech impediment can verbally express the cognitive and academic skills he/she has. However, if not given the accommodation of extra time to express

oneself, the listener may inappropriately label the speaker as being less intelligent than what he/she is. Kirk's profile indicates he has the superior cognitive skills to achieve. He certainly has the drive, motivation, and courage to help overcome any challenges that will hinder the performance of such skills. However, much like a person who has an expressive speech disorder, Kirk requires more receptive time to acquire/process the information being presented. Having substantially limited reading or writing fluency certainly does not mean that Kirk would not make an excellent physician. Given Kirk's educational history of learning disabilities, yet given his high motivation to overcome these impairments, achieve high school and college graduation, and successful completion of two years of medical school, would indicate that he has the "right stuff" to make a very well respected physician.

_____
Affiant

SWORN TO and SUBSCRIBED BEFORE ME on this 19th day of November, 2007.

_____
Notary Public in and for the State of Wisconsin

My Commission Expires: 05-23-10

# DC Everest Area Schools
### 6300 Alderson Street, Schofield, WI 54476
### 715-359-355-0302 X5825

July 2, 2007

Disability Services
National Board of Medical Examiners
3750 Market Street
Philadelphia, PA 19104-3190

Dear Board Members,

I am writing this letter in support of Kirk Jenkins who has requested test accommodations for the United States Medical Licensing Examination (USMLE) Step 1. I am under the impression that your board indicated that Kirk did not have a substantial limited leaning impairment that would require such accommodations. This letter is to substantiate that Kirk Jenkins did indeed meet eligibility requirements for a severe learning disability under state and federal laws in 1991 and has been receiving learning accommodations for those impairments throughout his educational career.

I was the district psychologist at the time of Kirk's referral for a special education evaluation in 1991 when he was a third grader. The reason for Kirk's referral was that his severe academic problems in spelling, written language, and reading substantially limited his daily progress. State and federal laws at the time of Kirk's evaluation required the IEP (Individual Educational Plan) team to determine whether there was a discrepancy between his expected achievement based upon overall cognitive abilities and his actual achievement functioning.

Kirk's evaluation results clearly indicated severe deficits in written language and spelling and, to some degree, reading. Please know that a person's demonstrated superior intelligence does not eliminate his/her eligibility for being considered learning disabled. While Kirk was found to have superior overall intellectual abilities, he was also found to have academic skills that were substantially below (more than 1.5 standard deviations below the mean) what can be expected based upon his cognitive performance. However, just showing a discrepancy between cognitive and functional academic achievement is not the only issue the IEP team considered. In such cases the IEP team also considers if the student's deficits <u>significantly</u> limit him/her from adequately performing in the classroom. In Kirk's case, the IEP team not only found him to be academically functioning far below expected levels given his excellent cognitive skills, but also found him to be substantially struggling in daily performance.

It should also be noted that the entire "IEP team" (not just <u>one</u> evaluator) legally determines a severe learning disability. Kirk's IEP team included a psychologist, a learning disability specialist, a principal, and classroom teachers. Daily classroom performance, evaluation results, developmental history, and medical and family factors are all considered in making such a decision. The particular team that evaluated Kirk's assessment results and made a determination of his eligibility for a severe learning impairment had significant years of experience evaluating and working with children who have learning disabilities. In addition, every educational and clinical psychologist and IEP team who have evaluated Kirk the past 16 years have substantiated the fact that Kirk is indeed learning impaired and in need of learning accommodations.

I am aware that the medical community has different guidelines in what determines a learning disability. One scenario that the educational system frequently encounters is when children are "identified" by a medical facility as learning disabled, yet are no where near the state and federal educational eligibility requirements for special education (thus not considered severely disabled). However, rarely, if ever, have we encountered a situation where the student has clearly been identified as learning impaired throughout his educational career, but not considered as such by a medical professional or board. In order for a student to be considered eligible for special education services, the child must meet the state and federal LEGAL eligibility requirements not just DSM IV criteria. Therefore, for the board to state that Kirk does not have a substantial learning impairment and is not in need of accomodations runs contrary to what all educational and clinical professionals have documented for 16 years.

After the 1991 IEP team determined that Kirk does indeed have a learning disability, the team then developed an IEP that specifically provided Kirk special assistance. This special assistance was in the form of direct services for written language and spelling as those were the areas that were most impaired. The main issue with Kirk's learning profile was that he had significantly high intelligence and knowledge, but had severe difficulty fluently and efficiently expressing these skills in daily work. His case is very similar to a person who has super intelligence/cognitive functioning, but who has expressive speech problems. If given ample time, the person with the speech impediment can verbally express the cognitive and academic skills he/she has. However, if not given the accommodation of extra time to express oneself, the listener may inappropriately label the speaker as being less intelligent than what he/she is. Kirk's profile indicates he has the superior cognitive skills to achieve. He certainly has the drive, motivation, and courage to help overcome any challenges that will hinder the performance of such skills. However, much like a person who has an expressive speech disorder, Kirk requires more receptive time to acquire/process the information being presented. Having substantially limited reading or writing fluency certainly does not mean that Kirk would not make an excellent physician. Given Kirk's educational history of learning disabilities, yet given his high motivation to overcome these impairments, achieve high school and college graduation, and successfully complete two years of medical school, would indicate that he has the "right stuff" to make a very well respected physician. He knows what suffering is. He personally knows about battling all the odds. Those are personal elements that add to the overall character of a great physician. Please do not limit a fine, talented person the opportunity to become a significant physician in the field of medicine. Given his history of learning impairments, Kirk deserves to take the Step 1 examination with limited accommodations.

I appreciate the board's willingness to read my letter and am hopeful that you will give this fine young man the chance of becoming an outstanding physician so that he can in turn serve all of us.

Most respectfully,

*Michael Gontarz*

Michael Gontarz, EdD, NCSP, LCP
Nationally Certified School/Educational Psychologist (NASP #102820)
Licensed Private Practice School Psychologist (WI #284-058)
Licensed Professional Counselor (WI #2363-125)

mgontarz@dce.k12.wi.us

## BUSINESS RECORDS AFFIDAVIT

STATE OF Wisconsin §
§
COUNTY OF Marathon §

BEFORE ME, the undersigned authority, personally appeared Trudy DeSimons who, being by me duly sworn, stated as follows:

My name is Trudy DeSimons, I am over twenty-one (21) years of age, of sound mind, capable of making this affidavit, and have knowledge of the facts herein stated.

I am the custodian of the records of D.C. Everest Area School District. Attached hereto are 13 pages of records from D.C. Everest Area School District, regarding Kirk D. Jenkins. These said 13 pages of records are kept by the said custodian of records in the regular course of business, and it was the regular course of business of D.C. Everest Area School District for an employee or representative of the D.C. Everest Area School District with knowledge of the act, event, condition, or opinion recorded to make the memorandum or record or to transmit information thereof to be included in such memorandum or record; and the memorandum or record was made at or near the time of the act, event, condition, or opinion recorded or reasonably soon thereafter.

The records attached hereto are exact duplicates of the original records.

_____
Affiant

BUSINESS RECORDS AFFIDAVIT – PAGE 1

EXHIBIT 3

SWORN TO and SUBSCRIBED BEFORE ME on this 7th day of November, 2007.

Elizabeth M. Schmelz
Notary Public in and for the State of Wisconsin

My Commission Expires: 05-23-10

BUSINESS RECORDS AFFIDAVIT – PAGE 2

```
PSYCHOLOGIST'S REPORT
Michael Gontarz
D.C. Everest Area Schools
6300 Alderson St.
Schofield, WI   54476
```

CONFIDENTIAL

NAME:           Kirk Jenkins
PARENTS:        Mr./Mrs. David Jenkins
PHONE:          359-9359
ADDRESS:        2005 Hemlock
                Schofield, WI   54476
SCHOOL:         Rothschild Elementary
GRADE:          3.5
BIRTHDATE:      5/13/82
CA:             8-8
DATE OF EVALUATIONS: January, 1991
DATE OF REPORT:      January 31, 1991

## REASON FOR REFERRAL:

Kirk was referred by this evaluator after academic screening results indicated delays in spelling and written language. An evaluation was conducted as part of assessing whether Kirk may qualify for the learning disabilities program.

## PROCEDURES COMPLETED:

Observations, teacher interviews, parent interviews, child history, Child Skills Checklist, Child Behavior Checklist, Teacher Report Form, ADHD Rating Scale, Wechsler Intelligence Scale for Children-Revised, Kaufman Test of Educational Achievement, Test of Auditory Perceptual Skills, Beery Developmental Test of Visual-Motor Integration, and Culture Free Self-Esteem Inventory.

## BACKGROUND INFORMATION:

**Family Information**: Kirk lives with his natural parents and two older sisters (ages 13 and 16 respectively). His father is a physician, his mother is a teacher and homemaker. Kirk's oldest sister has had a history of learning, language and mobility (ataxia) difficulties and is currently receiving LD and speech/language services. Kirk's father also has a childhood history of learning difficulties; in addition, Mrs. Jenkins has the mobility deficit (ataxia).

**Medical/Developmental Information**: Kirk was born early via C-section and weighed 8 lbs., 15 oz. Infant feeding, weight gain and activity level were all normal. Childhood illness and injury history is uneventful. According to parental reports, Kirk's current medical condition is excellent. No eating, sleeping, vision, or hearing problems are noted. Kirk's current physician is Ellen Schumann, M.D. of Wausau (847-3575); his last physical examination was in the spring of 1990.

Developmentally, many of Kirk's milestones arrived quickly (walking, babbling, speaking first word, putting words together). All other milestones arrived at an average rate. Language development has been characterized by easy to understand speech and an excellent and mature vocabulary.

1

Past Education, Interventions, and Assessment Results:

Kirk began his educational career at Kinder-Care/Montessori Preschool, before enrolling in Rothschild Elementary. He enjoys school; his attendance is excellent. Kirk has been receiving one to one, small group regular education instruction whenever available. Teachers have been concerned from year to year about Kirk's academic progress in spelling, written language, and reading.

A screening completed in November, 1990, using the Kaufman Test of Educational Achievement indicated that Kirk was above grade level in math, 1/2 to 1/4 grade year behind in reading, and 1 to 1 1/2 grade years delayed in spelling.

OBSERVATIONS:

Observations of Kirk during testing indicated that he was very cooperative, pleasant, and hard-working. Kirk spontaneously initiated conversation with the evaluator, often elaborating on various topics. He also exhibited a fine range of affect and even displayed some appropriate humor. However, Kirk needed some instructions repeated (especially if the instructions contained numbers - like a mental arithmetic problem).

ASSESSMENT DISCUSSION:

Cognitive/Intellectual: Kirk's current level of intellectual functioning, as measured by the Wechsler Intelligence Scale for Children-Revised, is in the superior range as he obtained a Full Scale IQ of 139 +/- 5 (99th percentile). The chances are 90 out of 100 that Kirk's true Full Scale IQ falls between 134 and 144. His obtained Verbal IQ of 133 +/- 6 (99th percentile, superior) and Performance IQ of 135 +/- 7 (99th percentile, superior) would suggest that the chances are 90 out of 100 that Kirk's true Verbal IQ falls between 127 and 139 and true Performance IQ between 128 and 142.

Within the Verbal Section of the WISC-R, Kirk displayed a relative strength in the area of understanding the relationships between things and ideas (high). His ability to understand and interpret social situations was also quite high. Kirk's general knowledge, mental arithmetic, and vocabulary were all much above average. Therefore, Kirk verbally demonstrated above average to superior verbal comprehension, verbal concentration, and conceptualizing ability. Short-term auditory memory (auditory sequencing) was a relative weakness for Kirk when compared to his test average/mean. The Test of Auditory Perceptual Skills indicated average to above average skills in most areas except auditory interpretation of directions. Again, Kirk displayed some auditory sequencing difficulties.

Within the Performance Section of the WISC-R, Kirk displayed high skills in the visualization and construction of objects and abstract designs. His ability to understand visual sequences of action, learn new non-verbal material under time restraints, and visually plan ahead were all very much above average. Therefore, Kirk's visual concentration, perceptual-motor development, non-verbal memory, and understanding of spatial relationships are all quite advanced. Only one relative weakness was exhibited when compared to his overall performance average: the ability to distinguish essential from non-essential visual details.

Informal testing indicated that Kirk had some left-right confusion. He was able to repeat polysyllabic words, mentally solve subtraction problems, and readily discriminate between rhyming and non-rhyming words. He could not, however, say the months in sequence (repeatedly incorrectly sequencing September, October, November as October, September, November); he became very confused when saying the months backwards. Kirk's recitation of the multiplication tables was sometimes inaccurate for the 4 and 5 tables.

Given Kirk's superior intellectual abilities, educators can expect him to be academically functioning at or near the beginning fifth grade level.

Achievement: Kirk's performance on the Kaufman Test of Educational Achievement revealed the following results:

|  | Standard Score | Percentile | Grade Level |
|---|---|---|---|
| Math Application | 110 | 75th | 4.1 |
| Math Computation | 112 | 79th | 3.9 |
| Overall Math | 113 | 81st | 4.0 |
| Reading Decoding | 93 | 32nd | 2.6 |
| Reading Comprehension | 104 | 61st | 3.7 |
| Overall Reading | 98 | 45th | 3.0 |
| Spelling | 87 | 19th | 2.1 |

Kirk's main achievement difficulty was in the area of spelling where he had the most problems spelling vowel digraphs and dipthongs (ou, ai, oe, ie, ea), suffixes or word endings (on, or) and consonant clusters and diagraphs (fr, br). Reversals of b and d were evident but not consistent. Reading decoding also indicated difficulties with vowel digraphs and dipthongs and single and double consonants. Kirk's decoding difficulties, when compared to his cognitive abilities, are significant but he compensates very well when comprehending as he picks up contextual cues. Teachers report that Kirk is in the middle reading group and is functioning well within that group. His reading needs, for the time being, are being met in the regular education classroom. Kirk is also in the middle math group and is doing very well in that group. However, given that Kirk shows significant spelling weaknesses, some left-right confusion, some confusion of b and d, and difficulty with multiplication tables and auditory sequencing, he may be showing some signs of dyslexic tendencies.

Socio-Emotional/Behavioral: Parental reports and responses on the Child Behavior Checklist indicate that there are no significant behavioral problems that are affecting Kirk's learning. He is described as a very cooperative, appropriately sensitive child who wants to please. He perseveres rather well on most tasks. Kirk is emotionally mature for his age and seeks responsibility. He exhibits typical and appropriate verbal and physical interaction with family members and peers and has a long attention span. He organizes himself in work and play rather well. However, Kirk is repeatedly frustrated with his school performance in reading and spelling; he has voiced concerns that he might be "dumb".

(3)