

Denied-Decision Letter (a

National Board of Medical Examiners
3750 Market Street
Philadelphia, PA 19104-3102

**CONFIDENTIAL**

May 18, 2007

215-590-9500 phone
www.nbme.org

Kirk D. Jenkins

REDACTED

Ringle, WI 54471

RE: USMLE Step 1    USMLE ID#: 5-194-442-9

DEFENDANT'S EXHIBIT 3

Dear Mr. Jenkins:

We have carefully reviewed your request for test accommodations for the United States Medical Licensing Examination (USMLE) Step 1 and accompanying material in accordance with USMLE guidelines for examinees with disabilities and within the framework of the Americans with Disabilities Act (ADA). We consulted an expert in the field of disorders of learning to assist us in reviewing the documentation.

Learning difficulties of sufficient severity to substantially compromise reading and learning are generally recognized as being developmental in nature. Consequently, it is expected that chronic and pervasive difficulties with reading or learning will emerge during childhood. Individuals with learning disabilities typically present a long history of academic difficulties and poor achievement dating back to elementary school. Despite the difficulties that you report, no school records, such as grade reports, results of standardized tests, transcripts, etc., were provided to demonstrate that you have experienced longstanding and substantial impairment with respect to reading or learning.

The records you have provided show that in fifth grade you achieved average or higher scores on all subtests of the Comprehensive Tests of Basic Skills (CTBS), including a Total Reading performance better than 89% of grade peers. Your records show a consistent pattern of average or better performances on timed nationally standardized examinations through high school. You earned PSAT Verbal scores at the 55th and 49th percentile rank in ninth and eleventh grades, respectively. Your overall performances (composite) over three administrations of the ACT in 1998-1999 range from the 56th to 82nd percentile rank compared to grade peers.

Professionally recognized diagnostic standards for a learning disorder presume the existence of an underlying central nervous system dysfunction which is reflected in normative deficits in cognitive functioning and in related areas of academic functioning. While relative differences may exist among your scores, your overall performances on a range of cognitive and academic achievement tasks across four evaluations from 1991 to 2007 are well within the range of average functioning and do not demonstrate cognitive or academic deficits that substantially impair your ability to read, write, or learn relative to the average person in the general population.

According to a January 31, 1991 Psychologist's Report, your evaluator, Michael Gontarz, MSEd, states that you were referred "due to weaknesses in spelling, written language, and to some degree reading." He reports, "Although reading decoding is near the discrepancy level, Kirk's comprehension is not. Therefore, it is questioned if reading should be considered an EEN." In his report, Mr. Gontarz does not assign you a *DSM* diagnosis. Furthermore, he reports that you achieved scores in the average range on all measures of reading. Thus, it appears your reading ability as early as third grade was in the average range compared to same age peers.

According to an October 1999 Psychological Report, your evaluator, David R. Holmes, PhD, reports that you have "a history of learning style difficulties" and that you are considering requesting extended-time testing for a nationally standardized college placement test. Your evaluator does not assign you a *DSM*

diagnosis and states, "The WIAT showed all achievement scores to be technically in the average range but all subtest scores except for Mathematics Reasoning are significantly below expectation."

Dr. Holmes evaluated you once again in 2003, assigning you the diagnosis of Learning Disorder NOS. He states, "Kirk not only showed intracognitive discrepancy on the WAIS-III but also showed ability–achievement discrepancy compatible with the pattern of intracognitive discrepancy previously noted. Any task requiring reading with speed expectations produced his lowest scores." It appears that your evaluator bases his 1999 comments and 2003 diagnosis upon discrepancies among your performances on various measures of cognitive ability and academic achievement. However, currently validated theories and research do not support using a discrepancy model as the sole basis of a diagnosis or rationale for accommodations. With the exception of your 1999 *Wechsler Individual Achievement Test (WIAT)* Spelling subtest score, your 1999 and 2003 performances on a range of cognitive and academic achievement tasks were well within the average range or better. Average range reading ability, no matter how discrepant from one's IQ score, is by definition average and does not demonstrate impaired reading.

According to a Psychoeducational Report dated January 2007, your evaluator, John M. Lacy, PhD, assigns you three diagnoses; Reading Disorder, Disorder of Written Expression, and Learning Disorder Not Otherwise Specified. Dr. Lacy appears to base his diagnostic conclusions upon an ability-achievement discrepancy formula whereupon he sets your Very Superior range *Wechsler Adult Intelligence Scale (WAIS-III)* IQ score of 130 as the benchmark or "expected achievement level" against which he compares your *Woodcock Johnson, Third Edition (WJ-III)* achievement scores. Using an extreme 98th percentile IQ as the standard by which all other scores should be measured incorrectly presumes that all abilities should be evenly well developed. While your test scores show variability, your reported *WJ-III* Broad Reading and Broad Written Language standard scores of 92 and 96 respectively are solidly average.

Accommodations are intended to provide equal access to the USMLE testing program for individuals who are covered under the ADA. A diagnostic label, in and of itself, does not establish coverage under the ADA, nor does prior receipt of accommodations for a particular activity guarantee that identical accommodations are indicated or will be available in all future settings and circumstances. Regulatory decisions and case law have established that the ADA covers individuals who are substantially limited in a major life activity. Determination of whether an individual is substantially limited in functioning as compared to most people is based on assessment of the current impact of the identified impairment. Working harder than others and performing below one's expectations on standardized examinations in a competitive academic environment are highly subjective judgments that even if possible to quantify, are not necessarily reflective of impaired functioning.

The conclusions of your evaluators notwithstanding, the developmental evidence and pattern of test results provided in your documentation do not demonstrate substantial impairment in one or more major life activities. Therefore, after a careful review of all of your documentation, I must inform you that we are unable to provide you with the requested accommodations.

We will advise Applicant Services to process your exam application without test accommodations. You may inquire at usmlereg@nbme.org or call Applicant Services directly at (215) 590-9700 with any questions about your scheduling permit.

Sincerely,

Catherine Farmer, Psy.D.
Manager, Disability Services
ADA Compliance Officer, Testing Programs

CF/geb