UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY

KIRK D. JENKINS

    Plaintiff,

v.                                                  Civil Action No. <u>3:07CV698-H</u>

NATIONAL BOARD OF MEDICAL
EXAMINERS,

    Defendant.

<u>JENKINS' BRIEF ON ADA</u>

**To the Honorable United States District Court Judge:**

    Kirk D. Jenkins ("Jenkins") files his Brief in Support of Motion for Preliminary Injunction and respectfully states the following

**I.
Summary of the Brief**

1.    The issue before the Court is whether the Americans with Disabilities Act entitles Jenkins to accommodation on the USLME Step 1 exam. Jenkins is requesting 1 and ½ time on the exam. The Court will hear evidence on February 6, 2008; this brief sets forth what counsel believes to be the applicable law.

2.    Under the Americans with Disabilities Act ("ADA"), a person is disabled if he or she suffers from a "physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42. U.S.C. §12102(2)(A). Learning disabilities affecting one's ability to read are mental impairments. *See, e.g., Gonzalez v. National Board of Medical Examiners*, 225 F.3d 620, 627 (6th Cir. 2000). Inherent in the task of test-taking are the major life activities of: reading, learning, writing, processing information, and working. *See id.* An impairment affecting one's ability to read, learn, write, and process information is substantially

limiting when an individual's actions are restricted as to the condition, manner, or duration under which they can be performed in comparison to most people. 28 C.F.R. pt. 36, app. B. An impairment affecting one's ability to work is substantially limiting when the individual is significantly restricted in his ability to perform a class of jobs as compared to the average person having comparable training, skills and abilities. 29 C.F.R. § 1630.2(j)(3)(i) (1999).

## II.
## Authorities

3. For purposes of the ADA, a person is disabled if he or she suffers from a "physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42. U.S.C. §12102(2)(A). Courts have broken this down into a three-part decision process: (1) whether the plaintiff's problems constitute a mental impairment; (2) whether the life activities upon which plaintiff relies are major life activities; and (3) whether plaintiff's impairment substantially limits these major life activities. *Bragdon v. Abbott*, 524 U.S. 624, 641 (1998); *Gonzalez v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 627 (6th Cir. 2000). While the ADA fails to define the terms necessary to apply this standard, and no agency has authority to issue regulations to implement and define the general provisions of the ADA, courts have used both Department of Justice ("DOJ") and Equal Employment Opportunity Commission ("EEOC") regulations to create a framework for answering these three questions.

### A. A PHYSICAL OR MENTAL IMPAIRMENT UNDER THE ADA.

4. The DOJ, who has authority to implement regulations under Title III of the ADA, defines physical or mental impairment as including "specific learning disabilities." 28 C.F.R. §36.104. While courts have pointed out that a psychologist's or clinician's diagnosis of a disability is not binding upon the ADA, numerous court's relying upon such diagnosis have held that learning disabilities affecting one's ability to read, such as dyslexia and lack of automaticity,

are mental impairments under the ADA. *Gonzalez*, 225 F.3d at 627; *Baer v. Nat'l Bd. of Med. Exam'rs*, 392 F. Supp. 2d 42, 47 (D. Mass. 2005); *Bartlett v. N.Y. State Bd. of Law Exam'rs*, 226 F.3d 69, 80 (2d Cir. 2000), *on remand to,* 2001 WL 930792 (S.D.N.Y. 2001)(holding that student's lack of automaticity was an impairment that substantially limited her ability to read entitling her to accommodation on the New York Bar Exam).

    5.    To qualify as an impairment under the ADA, a basic activity the average person in the general population can perform with little or no difficulty must be involved. 29 C.F.R. Part 1630, Appendix, § 1630.2(i). In this case, Jenkins suffers from a lack of automaticity and reading fluency. Automaticity is "fast, accurate and effortless word identification at the single word level." Pamela E. Hook & Sandra D. Jones, *The Importance of Automaticity and Fluency for Efficient Reading Comprehension*, International Dyslexia Association, Perspectives, Winter, 2002, vol. 28, no. 1, pages 9-14 (2002). Fluency involves automatic word identification and application of appropriate prosodic features at the phrase, sentence, and text levels. *Id*. In *Bartlett v. New York Board of Law Examiners*, the student suffered from a cognitive reading disorder including poor automaticity and reading rate, and the court held that such a deficiency was an impairment under the ADA. *See Bartlett,* 226 F.3d at 82.

    6.    In *Bartlett*, the Second Circuit found that the District Court had applied the wrong standard it its first decision and remanded. *Bartlett* 226 F.3d at 81. The Second Circuit stated that "it is not enough that [a person] has average skills on 'some measures' if her skills are below average on other measures to an extent that her ability to read is substantially limited." *Id*. In *Barlett*, the court stated that the ultimate question is whether the student's "lack of automaticity and slow rate of reading amount to a substantial limitation in comparisons to most people or only a 'mere difference.'" *Id*.(remanding to the district court for further findings). The District Court,

in a fifty-one page opinion, discussed at length the findings of all the psychologists that examined the student and her test performance, and while making it clear that he did not believe a student's scores on tests should be controlling and that a clinician's examination of the student was just as helpful if not more in determining the extent of one's impairment, he found that where a highly educated, intelligent adult reads in the twenty-second percentile of tests such as the DRT, it could not be denied that that adult has a reading rate disability. *Bartlett*, 2001 WL 930792 at *28.

7. Jenkins likewise suffers from poor automaticity and reading fluency. To establish that an individual is "substantially limited" in a major life activity, that person must show a limitation in their ability to perform a life function as compared to most people. *E.g. Price v. Nat'l Board of Med. Exam'rs*, 966 F.Supp. 419, 427(S.D.W.V. 1996). As stated in *Price*, "[c]ourts are ill-suited for determining whether a particular medical diagnosis is accurate [and] are better able to determine whether an individual's ability in comparison to most people." *Id.*

8. Compared to most people his age, Jenkins scores in the 14h percentile on the Woodcock Johnson Reading Fluency test. In other words, 86% of people his age scored better. On Broad Reading, Jenkins scores in the 29th percentile, meaning 71% of people his age scored better. On Broad Written Language, Jenkins scores in the 39th percentile, meaning 61% of people his age scored better. On overall Academic Fluency, Jenkins scores in the 20th percentile, meaning 80% of people his age scored better.

9. Once it has been determined that the plaintiff does suffer from an impairment, the court must then determine whether or not this impairment affects a major life activity. *Bragdon v. Abbott*, 524 U.S. 624, 641 (1998); *Gonzalez v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 627 (6th Cir. 2000).

B.  **MAJOR LIFE ACTIVITY UNDER THE ADA.**

10. Major life activity is not defined by the ADA; however, according to the DOJ, major life activity includes "walking, seeing, hearing, speaking, breathing, learning and working." *Id.* §36.104(2). This list is not an exhaustive list but merely illustrative. *Gonzalez*, 225 F.3d at 626; *Reeves v. Johnson Controls World Servs.*, 140 F.3d 144, 150 (2d Cir. 1998).

11. Reading and writing are major life activities. *E.g. Gonzalez*, 225 F.3d at 626. "The ability to read is necessary in many instances to perform major life activities such as caring for oneself, learning, and working." *Shaffer v. Spherion Corp.*, No. 06-CV-02357-EWN-BNB, 2007 WL 4557778, at *7 (D.Colo. December 20, 2007). "The fact that reading is of comparative importance, and that it is central to most people's daily lives, establishes that reading is a major life activity." *Id*. In this case, as well as in *Gonzalez*, the NBME does not dispute that reading and writing are major life activities. *See Gonzalez*, 225 F.3d at 626.

12. In this case, the specific task to be performed is the taking of a test. While taking a test itself is not a "major life activity" protected under the ADA, courts, including the Sixth and Second Circuits, have held that test-taking involves the major life activity of reading. *Gonzalez*, 225 F.3d at 626; *Baer v. Nat'l Bd. of Med. Exam'rs*, 392 F. Supp. 2d 42, 47 (D. Mass. 2005); *Bartlett v. N.Y. State Bd. of Law Exam'rs,* 226 F.3d 69, 80 (2d Cir. 2000), *on remand to,* 2001 WL 930792 (S.D.N.Y. 2001). In addition to reading, learning and processing information are other major life activities affected during test-taking. *See Love v. Law School Admission Council, Inc.*, 513 F.Supp.2d 206, 224 (E.D.Pa. 2007); *Price v. Nat'l Bd. of Med. Exam'rs*, 966 F. Supp. 419, 423 (S.D. W.Va. 1997); *Rothberg v. Law School Admission Council, Inc.*, 300 F. Supp. 2d 1093, 1105 (D. Colo. 2004), *rev'd on other grounds*, 102 F.App'x 122 (10th Cir. 2004). Specifically addressing licensing exams such as the USMLE and bar exams, courts have also

held that the major life activity of working can be affected. *Biank v. Nat'l Bd. of Med. Exam'rs*, 130 F.Supp.2d 986, 991 (N.D. Ill. 2000); *Bartlett,* 226 F.3d at 82.

13. A reading impairment such as automaticity, dyslexia, and slow reading rate are impairments that affect one's ability to read, learn, and process information–all major life activities involved in taking an exam. *See Gonzalez,* 225 F.3d at 626; *See Bartlett,* 226 F.3d at 82; *Biank,* 130 F.Supp.2d at 991. Once it has been established that a person's impairment affects a major life activity, the next question that must be answered is whether this affect rises to the level of "substantially limit[ing]." *Gonzalez v. Nat'l Board of Med. Exam'rs,* 225 F.3d 620, 627 (6th Cir. 2000). This element is the most commonly addressed and analyzed element of the triptych.

### C. SUBSTANTIAL LIMITATION OF A MAJOR LIFE ACTIVITY.

14. The text of the ADA does not define "substantially limits." Such a determination is a question of both law and fact. *Bartlett v. N.Y. State Bd. of Law Exam'rs,* 226 F.3d 69, 80 (2d Cir. 2000). By applying definitions found in administrative regulations, the courts have been able to establish a legal guideline of what is considered "substantially limit[ing] ." The Supreme Court has made it clear that a substantial limitation is not equivalent to an inability to perform that function. *See Bragdon v. Abbott,* 524 U.S. 624, 641 (1998). However, in reviewing Supreme Court precedent, the Sixth Circuit stated that to be considered "substantially limit[ing]," the impairment must limit an individual in "a major way, to a considerable amount, or to a large degree." *Gonzalez,* 225 F.3d at 627, n. 12.

15. Both the DOJ and the EEOC have developed regulations that define "substantially limits." The courts have applied the DOJ regulations to cases in which the individual asserted an impairment which affected his ability to read, learn, or process information. Courts have applied

the EEOC regulations where an individual asserts that his impairment affects his ability to work. In cases involving licensing exams such as the USMLE, both provisions have been applied and analyzed. Although similar, differences in the regulations justify a separate analysis.

> 1. **An Impairment Substantially Limits Reading, Learning, or Processing Information When an Individual's Actions are Restricted as to the Condition, Manner, or Duration Under Which They can be Performed in Comparison to Most People.**

16. Under Title III, the DOJ defines "substantially limits" when an individual's actions are "restricted as to the condition, manner, or duration under which they can be performed in comparison to most people." 28 C.F.R. pt. 36, app. B. The DOJ lists factors to be considered in determining the extent of an impairment including: (1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long term impact, or the expected permanence or long term impact of or resulting from the impairment. 28 C.F.R. 1630.2(j)(2). The burden of proving an impairment substantially limits a major life activity "is not necessarily an onerous one, and in fact, certain limitations will 'ordinarily' qualify as disabilities." *Bartlett*, 226 F.3d at 80.

17. "Slow reading speed is clearly a condition or manner that can present a substantial limitation . . ." *Id.* at 81 (holding that student's lack of automaticity and a phonological processing defect could substantially limit one's ability to read and remanding to district court for further findings). The mental impairment of automaticity substantially limits one's ability to read because "'most people' can do the following things that are extremely difficult or impossible for [someone with automaticity]: read and write quickly and automatically, recognize words and letters automatically, develop a sight vocabulary, and form letters without consciously thinking what they look like." *Bartlett v. N.Y. Bd. of Law Exam'rs*, No. 93-CIV4986-SS, 2001 WL 930792 at *36 (S.D.N.Y. 2001)(holding that student was entitled to accommodation on the

New York Bar Exam due to student's automaticity even though student was highly accomplished academically).

18. In determining whether one's ability to read is substantially limited by their impairment, the proper test is not the end result of tasks that involve reading; instead, the court must examine the qualitative aspects of how an individual reads. *See id.* at *37 (rejecting the defendant's argument that plaintiff's average ability on unaccommodated tests such as the LSAT, GRE, and SAT precluded a finding that she had a reading disability). In justifying this analysis the court in *Bartlett*, stated that "a definition of disability based on outcomes alone, particularly in the context of learning disabilities, would prevent a court from finding a disability in the case of any individual who is extremely bright and hardworking, and who uses alternative routes to achieve academic success." *Id.* In *Bartlett*, the court found that the plaintiff was entitled to accommodation for her reading disability under the ADA, despite the fact that she had been successful in the general field of academia. *Id.* (where plaintiff had earned a Ph.D. in Education Administration for New York University and a law degree from Vermont Law School).

19. In determining the extent of one's impairment, the courts have considered the totality of the circumstances including: (1) the individual's scores on psychological tests; (2) a disparity in the individual's IQ and performance on these tests; (3) the effect of the individual's impairment on his ability to perform the function in everyday life; and (4) clinician's observations of the individual's impairment and its affect on the individual's ability to perform the specific function. *See Bartlett*, 2001 WL 930792 at *37; *See Gonzalez v. Nat'l Board of Med. Exam'rs*, 225 F.3d 620, 627 (6th Cir. 2000); *Love v. Law School Admission Council, Inc.*, 513 F.Supp.2d 206, 224 (E.D.Pa. 2007). For instance, in *Gonzalez v. National Board of Medical*

*Examiners,* a medical student applied for extra time to take the Step 1 Examination, claiming he suffered from a reading and processing disorder. 225 F.3d at 622-623. Importantly, the court did not analyze the student's performance on comprehensive unaccommodated examinations such as the SAT, the MCAT, or the NBME Step 1 Exam. *Id.* at 629. Instead the court analyzed the student's scores on the more than twelve tests administered by a competent and accomplished psychologist including the Digit Span Test, reading and writing tests, the Wechsler Memory Scale, and the Woodcock Johnson Test. *Id.* The court also analyzed the student's verbal, performance, and full scale IQ in comparison to the general population. *Id.*

20. While most published cases addressing this issue have found that the plaintiff's impairment is not substantially limiting, all of the cases involve extensive factual analysis and are case specific. Jenkins impairment and evidence supporting the effect of his impairment on his ability to read must be contrasted to the facts presented in cases such as *Gonzalez*. The court must consider the totality of the circumstances such as: (1) Jenkins' scores on psychological tests; (2) the disparity between Jenkins' IQ and his performance on these tests; (3) the effect of the Jenkins' impairment on his ability to perform the function in everyday life; and (4) clinician's observations of the Jenkins' impairment and its affect on his ability to read. *See Bartlett*, 2001 WL 930792 at *37; *See Gonzalez*, 225 F.3d 620 at 629-630.

    **2.    An Impairment Substantially Limits Working When an Individual's Actions are Significantly Restricted in the Ability to Perform a Class of Jobs as Compared to the Average Person having Comparable Training, Skills and Abilities.**

21. Some courts have also found that passing a licensing exam affects the major life activity of working. *Bartlett v. N.Y. State Bd. of Law Exam'rs,* 226 F.3d 69, 80 (2d Cir. 2000); *Biank v. Nat'l Bd. of Med. Exam'rs,* 130 F.Supp.2d 986, 991 (N.D. Ill. 2000). When a person's disability prevents him from "competing on a level planning field" with other examinees of a

licensing exam, the disability has implicated the major life activity of working. *Bartlett*, 226 F.3d at 80. The danger of not accommodating a deserving person on a licensing examination is the deprivation of a fair opportunity to be tested on one's knowledge and not on one's disability. *See Bartlett*, 2001 WL 930792 at *46.

22. In regards to working, "substantially limits" means "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(i) (1999). The Second Circuit has held that it was not improper for a district court to apply this definition in analyzing the effect of a person's learning disability on a the person's performance on a licensing exam. *Bartlett*, 226 F.3d at 83. Exclusion from the practice of the profession due to failing a licensing exam is a significant restriction relative to a "class of jobs" in that profession. *Id.* at 84.

23. If a medical student does not pass Step 1 of the USMLE he cannot be licensed to practice medicine. This necessarily involves the major life activity of working. *Biank v. Nat'l Bd. of Med.l Exam'rs*, 130 F.Supp.2d 986, 991 (N.D. Ill. 2000); *See Bartlett*, 2001 WL 930792 at *44-46. (holding that plaintiff had proven that her reading impairment substantially limited her major life activity of working where she had shown a sufficient causal connection between her reading impairment and her failure to pass the bar).

24. The significant difference in applying the standard set forth in the EEOC definitions is that one's ability to perform the major life activity is compared not to the average public but instead to those having "comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(i) (1999). In *Biank*, the court considered a medical student's application for accommodation of exam time on the Step II Exam due to a reading impairment. *Biank*, 130

F.Supp.2d at 991. The court considered the extent of his reading impairment as compared with the average person in the fourth year of medical school. *Id.* While the court in *Biank* found that the plaintiff had failed to prove that his impairment substantially limited his ability to pass the Step II Exam, the court also considered plaintiff's argument that a low but passing score would significantly limit his participation in a medical residency program of his choice. *Id.* (holding that plaintiff failed to prove this requirement).

25. In this case, Jenkins is seeking accommodation on the Step I Examination. Without accommodation Jenkins will likely fail the exam, will not be licensed and his career as a doctor foreclosed. The Step 1 Examination is treated very differently than the Step II Examination, in that a medical student must take the Step I after his second year in medical school and his performance on the exam affects his placement in residency programs.

### III.
### Conclusion

For these reasons, Jenkins respectfully requests the Court to enter a preliminary injunction requiring the National Board of Medical Examiners to allow him normal time plus one-half time in which to take the USLME Step 1 exam.

Respectfully submitted,

Vincent E. Nowak, SBOT# 15121550
MULLIN HOARD & BROWN, LLP
500 S. Taylor, Suite 800
P. O. Box 31656
Amarillo, Texas 79120-1656
806.372.5050
806.371.6230 (Fax)

/s/ Vincent E. Nowak
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing document has been served by electronic mail from the Clerk of the Court or according to the Federal Rules of Civil Procedure to the following counsel of record on this 1st day of February 2008:

Stephen L. Barker
Sturgill, Turner, Barker & Moloney, P.LL.C.
333 West Vine Street Suite 1400
Lexington, KY 40507

/s/ Vincent E. Nowak