IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

| | | |
|---|---|---|
| KIRK D. JENKINS, | ) | |
|         Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:07CV-698-H |
| | ) | |
| NATIONAL BOARD OF | ) | Chief Judge John G. Heyburn, II |
| MEDICAL EXAMINERS | ) | |
|         Defendant(s). | ) | |

### AFFIDAVIT OF CATHERINE FARMER, PSY.D.

STATE OF PENNSYLVANIA    )
                                     )
COUNTY OF PHILADELPHIA    )

I, Catherine Farmer, having been duly sworn, hereby depose and state as follows:

1. I currently am employed by the National Board of Medical Examiners ("NBME") as Manager, Disability Services and ADA Compliance Officer, Testing Programs. As Manager, my duties include, among other things, operational responsibility for the office that receives and processes requests for test accommodations for the United States Medical Licensing Examination™ ("USMLE"). I am responsible for making decisions and recommendations to approve such requests as well as the appropriate accommodation(s) to be provided.

2. The NBME's Office of Disability Services is responsible for implementing the policy of providing test accommodations solely to individuals with recognized disabilities under the Americans with Disabilities Act ("ADA"). The ADA and accompanying regulations define a person with a disability as someone with a physical or mental impairment that substantially limits one or more major life activities such as walking, seeing, hearing, or learning.

EXHIBIT 2

- 1 -

3. The NBME provides written Guidelines at its website for requesting test accommodations on the USMLE. The Guidelines describe in detail the documentation examinees may provide to demonstrate the need for accommodations and validate that the individual is covered under the ADA as a disabled individual. Among other things, supporting documentation may include academic records and grade transcripts, standardized test scores, and reports of comprehensive psychological, psychoeducational, neuropsychological or medical evaluations. The Office of Disability Services ("DS") conducts a thorough record review, including the request for test accommodations, the examinee's personal statement, and all other supporting documentation submitted by the examinee. The NBME relies on the supporting documentation provided by the examinee, including diagnostic evaluation reports and treatment notes and summaries written by the examinee's evaluating and/or treating professional(s), and all objective and subjecting data provided therein, including behavioral observations and test scores.

4. Upon receipt and through review of an examinee's request for test accommodations and the submitted supporting documentation, NBME may consult with outside experts with expertise in the assessment, diagnosis and treatment of the claimed disability to assist in determining whether the applicant's submission shows that she or he has a substantial limitation in a major life activity and, if so, what accommodation is appropriate.

5. While the NBME grants accommodations to examinees with disabilities as defined by the ADA, the NBME has consistently denied any request for test accommodations that includes modifications in the standard conditions of test administration to anyone with a condition or impairment that does not rise to the level of a disability as defined by the ADA.

6. On December 5, 2006, NBME received from Mr. Kirk D. Jenkins ("Mr. Jenkins") a request for the test accommodation of time and one-half on Step 1 on the basis of an alleged

disability in reading and writing diagnosed in 1991. Mr. Jenkins' request and attached documentation were reviewed in detail by Gregory Baker, Psy.D., Psychoeducational Assessment Associate, as part of NBME's normal processing of requests for accommodation. Dr. Baker's preliminary review found Mr. Jenkins' submission to contain insufficient information for NBME to make an informed decision regarding his request for test accommodations. On December 7, 2006, Dr. Baker sent Mr. Jenkins a letter requesting additional information to demonstrate his current functioning and support his request for test accommodations. (Exhibit A)

7. On February 26, 2007, NBME received additional documentation from/on behalf of Mr. Jenkins. On March 2, 2007, Mr. Jenkins left a voice mail message that he intended to submit additional documents to complete his request for test accommodations. However, the NBME did not receive such additional documents. On April 5, 2007, Mr. Jenkins called NBME and stated that he had decided not to send additional documents and asked that we proceed with the review of his request as submitted. He was informed that processing of his request may take six to eight weeks.

8. On April 20, 2007, after a thorough internal review of Mr. Jenkins' request and associated supporting documentation, consistent with our procedure, the case was assigned to an outside consultant for review. On April 24, 2007, Mr. Jenkins' request and associated supporting documents were sent electronically to Richard Sparks, Ed.D. Dr. Sparks returned his completed review to NBME on April 30, 2007, recommending that Mr. Jenkins' request for accommodations should be denied on the basis that the documentation submitted did not demonstrate that Mr. Jenkins is unable to learn and achieve at a level commensurate with the

average person of his age in the general population. (Exhibit B) I reviewed Dr. Sparks' written review and concurred with his conclusions and recommendation.

9. On May 18, 2007, I sent a letter to Mr. Jenkins (Exhibit C) informing him that his request for test accommodations was denied and describing in detail the basis for that decision, including the following:

- The records he had provided showed a consistent pattern of average or better performances on timed nationally standardized examinations through high school including PSAT Verbal scores at the 55th and 49th percentile rank in ninth and eleventh grades, respectively;

- Mr. Jenkins had not provided any school records, such as grade reports, results of standardized tests, transcripts, etc., to demonstrate that he had experienced longstanding and substantial impairment with respect to reading or learning;

- Mr. Jenkins provided records showing that in fifth grade he had achieved average or higher scores on all subtests of the Comprehensive Tests of Basic Skills (CTBS), including a Total Reading performance better than 89% of grade peers;

- His overall scores (composite) over three administrations of the ACT in 1998-1999 showed average or better performance, ranging from the 56th to 82nd percentile rank compared to grade peers;

- His overall performances on a range of cognitive and academic achievement tasks across four evaluations from 1991 to 2007 were well within the range of average functioning and did not demonstrate cognitive or academic deficits that substantially impair his ability to read, write, or learn relative to the average person in the general population;

- His reading ability as early as third grade was in the average range compared to same age peers as reported in a January 1991 written report of evaluation by school psychologist Michael Gontarz, MSEd, NCSP, and no formal diagnosis was assigned;

- His academic achievement scores were reported to be in the average range according to an October 1999 Psychological Report by David R. Holmes, Ph.D., and no formal diagnosis was assigned;

- With the exception of his 1999 Wechsler Individual Achievement Test (WIAT) Spelling subtest score, his 1999 and 2003 performances on a range of cognitive and academic achievement tasks were well within the average range or better;

- Test scores reported by his evaluator, John M. Lacy, Ph.D., in January 2007 showed some variability, but his reported Broad Reading and Broad Written Language standard scores of 92 and 96 respectively were solidly average.

10. On May 25, 2007, Mr. Jenkins inquired by telephone about the procedure for requesting a reconsideration of our decision. He was informed that the procedure is to submit a written request along with new supporting documentation.

11. On July 19, 2007, we received a letter from Mr. Jenkins dated June 18, 2007 requesting to reapply for accommodations on Step 1 and supporting documents. (Exhibit D)

12. On July 26, 2007, the NBME sent Mr. Jenkins' request for reconsideration and his supporting documentation to an outside consultant, Joseph Bernier, Ph.D., for review.

13. Dr. Bernier returned his completed review to NBME on August 6, 2007, recommending that Mr. Jenkins' request for accommodations should be denied. Dr. Bernier found that despite Jenkins' reported reading fluency problems, the documentation he had

provided did not demonstrate a pattern of impairment on the sorts of standardized tests that are relevant to the lives of most people, including the following unaccommodated performances:

- Above average reading and language scores in 1993 (5th grade) on the *Comprehensive Test of Basic Skills (CTBS)*;

- Average range Verbal and Math scores in 1994 (9th grade) and average to above average range Verbal, Math, and Writing Skills 1996 (11th grade) on the *Preliminary SAT/National Merit Scholarship Qualifying Test (PSAT/NSMQT)*;

- Overall average range scores on three administrations of the *ACT* college entrance exam in 1998 and 1999, including an *ACT* Reading score at the 64th percentile without accommodations. (Exhibit E)

14. After my complete review of all of the documentation provide by Mr. Jenkins and Dr. Bernier's written report, I concurred with our consultant's conclusions and recommendation.

15. On August 29, 2007 a letter was sent to Mr. Jenkins informing him that his request for reconsideration was denied on the basis that the documentation he had provided did not demonstrate that he was substantially limited in a major life activity relative to the average person. (Exhibit F)

Further Affiant Sayeth Naught.

_____
Catherine Farmer, Psy.D.

Sworn to before me and subscribed in my presence this 31st day of January, 2008.

_____
Notary Public, State-at-Large, Pennsylvania
My Commission Expires: 11/16/09

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Patricia Weaver, Notary Public
City Of Philadelphia, Philadelphia County
My Commission Expires Nov. 16, 2009
Member, Pennsylvania Association of Notaries