April 28, 2007

Catherine Farmer, Psy.D.
Manager, Disability Services
National Board of Medical Examiners
3750 Market Street
Philadelphia, PA 19104

Dear Dr. Farmer:

I am writing in regard to the materials submitted by Kirk Jenkins, who has requested accommodations for the USMLE Step 1 exam. Specifically, Kirk stated that he has a reading disability and a writing disability. He has requested extended testing time (time and one-half) for the exam. In support of his request for accommodations, Kirk submitted the following materials: 1) a personal statement dated 11/25/06; 2) testing records that include scores on cognitive and academic achievement measures from fifth grade, the PSAT, the ACT, and the MCAT; 3) a psychological evaluation completed in 1/91 by Mr. Michael Gontarz of the D. C. Everest Area Schools; 4) a psychological evaluation completed by Dr. David Holmes completed in 10/99; 5) an updated assessment completed by Dr. Holmes in 8/03; 6) a psychoeducational evaluation completed by Dr. John Lacy in 1/07; 7) a letter written by Dr. David Holmes dated 1/4/07; 8) a letter dated 3/5/04 approving accommodations on the MCAT; 9) a letter dated 8/24/05 and a form certifying that he received accommodations in medical school; 10) a letter written by Michael L. McClintock dated 2/13/07; 11) a letter written by Brad Baum dated 2/3/07; 12) a letter written by Randall B. Colton dated 1/21/07; and 13) a letter written by William Heeren dated 1/3/07.

RECEIVED
APR 3 0 2007
Disability Services

EXHIBIT B

2

Based on my review of the documentation submitted by Kirk, it is my opinion that the available data do not demonstrate that he meets the criteria for Reading Disorder or Disorder of Written Expression. Specifically, the evidence does not show that he is unable to learn and achieve at a level commensurate with the average person of his age in the general population. The following evidence is offered in support of my opinion.

First, there is no documentation which shows that Kirk has a longstanding history of inability to learn at a level commensurate with his same age peers in the general population. Kirk received special education services at some point in his elementary school years; however, the documentation did not report the length of time that he received these services. The testing completed by Mr. Gontarz when Kirk was eight years old showed that his scores on standardized measures of reading and writing were in the average range on the KTEA Reading Decoding subtest {Standard Score ($SS$) =94, Reading Comprehension subtest, $SS = 104$, and Reading Composite $SS = 98$}. On the CTBS administered in fifth grade by the school district, Kirk achieved scores in the above average range on all Reading, Language, and Spelling measures (Reading Vocabulary-91st percentile, Reading Comprehension-83rd percentile, Total Reading-89th percentile, Language Mechanics-95th percentile, Language Expression-82nd percentile, Total Language-92nd percentile, Spelling-25th percentile). He also achieved scores in the average range on the PSAT Verbal (55th and 49th percentile) and Writing (84th percentile) sections. In addition, Kirk achieved scores in the average to above average range on the ACT English ($SS = 23-28$) and Reading ($SS = 16-23$) subtests as well as the test Composite ($SS = 21-25$) on three different occasions when the test was taken without accommodations. Thus, he achieved in the average to above average range when compared to a *select* population on this college entrance examination. The documentation provided by Kirk shows that his reading, writing, and spelling skills were in the average range as early as the third grade.

RECEIVED
APR 30 2007
Disability Services

Second, in the 1999 evaluation completed when Kirk was in the third grade, he was diagnosed as learning disabled. In the report, Mr. Gontarz based his diagnosis on the presence of an aptitude-achievement discrepancy. In their evaluations, Dr. Holmes and Dr. Lacy also based their diagnoses on aptitude-achievement discrepancies. However, the diagnosis of learning disability using this procedure has been shown to be invalid. In addition, Kirk achieved in the average to above average range on measures of reading and writing administered by Dr. Holmes in 1999 (WIAT Basic Reading $SS = 96$, WIAT Reading Comprehension $SS = 104$, WIAT Reading Composite $SS = 97$) and in 2003 (WIAT-II Word Reading $SS = 94$, WIAT-II Reading Comprehension $SS = 113$, and WIAT-II Pseudoword Decoding $SS = 96$, WIAT-II Reading Composite $SS = 103$, and WIAT-II Written Language Composite $SS = 102$). He also achieved in the average range on measures of reading and written language administered by Dr. Lacy in 2007 (WJ-III Letter-Word Identification subtest $SS = 94$, WJ-III Passage Comprehension subtest $SS = 116$, WJ-III Broad Reading $SS = 92$, WJ-III Broad Written Language $SS = 96$). The available documentation shows that Kirk's scores on timed measures of academic achievement, including scores for measures on which he was compared to a select population (ACT), were in the average range when he was compared to his age level peers.

Third, the available evidence does not provide documentation that Kirk meets the criteria for either Reading Disorder (DSM-IV, 315.0) or Disorder of Written Expression (DSM-IV, 315.2) because this diagnosis involves more than the presence of an aptitude-achievement discrepancy. There is no documentation that Kirk meets Criterion B in the DSM-IV descriptions of these disorders, i.e., the disturbance in Criterion A significantly interferes with academic achievement or activities of daily living that require reading skills. As stated earlier, Kirk's scores on standardized measures of reading and writing were in the average range when he was compared to a representative sample of his age level peers. Even when he was evaluated in the third grade, Mr. Gontarz indicated

RECEIVED
APR 3 0 2007
Disability Services

in his report that Kirk was achieving success in the middle reading group. Moreover, there is no evidence in the documentation which shows that reading and writing problems interfere with activities of daily living that require these skills.

Fourth, the available documentation does not show that Kirk meets the criteria for Learning Disorder Not Otherwise Specified (LD-NOS) (DSM-IV, 315.9). Both Dr. Holmes and Dr. Lacy included this diagnosis in their reports. But, there is no documentation in their reports which shows that he exhibits difficulty in all three academic areas, i.e., reading, mathematics, and written language, nor does the evidence indicate that problems in these skills together significantly interfere with academic achievement. In his report, Dr. Lacy appears to have based his diagnosis of LD-NOS on "low academic fluency." However, Kirk's scores on the Math Fluency ($SS = 90$) and Writing Fluency ($SS = 107$) subtests were in the average range. Kirk achieved in the below average range on one fluency measure, the WJ-III Reading Fluency ($SS = 84$). However, it is psychometrically inappropriate to ascribe clinical and diagnostic meaning to a single test score, especially when scores on other timed measures of reading, i.e., Letter-Word Identification and Passage Comprehension subtests, are in the average range. As stated previously, Kirk's scores on standardized achievement measures were in at least the average range when he was compared to his age level peers in the general population.

Fifth, in his report Dr. Holmes indicated that "spelling historically has been the primary expression of the LD although reading seems impacted when timed." However, there is no objective evidence that Kirk's reading performance was negatively impacted by time constraints. As stated previously, he achieved in the average range on timed, standardized measures of reading when compared to his age level peers and to a select population (on the ACT). Although Kirk has achieved

RECEIVED
APR 3 0 2007
Disability Services

5

low scores on standardized measures of spelling, his most recent score on the WJ-III Spelling subtest was in the average range ($SS = 90$). Moreover, the use of ipsative analysis, i.e., intraindividual subtest analysis, should not be conducted on individual subtest scores and should not be used to make diagnostic decisions.

Sixth, there were some problems with the testing reports completed by Dr. Lacy and Dr. Holmes. In their reports, the following problems were noted:

- Dr. Lacy used aptitude-achievement discrepancy analysis to diagnose Reading Disorder, Writing Disorder, and Learning Disorder Not Otherwise Specified. In his report, he included the WAIS-II Index Scores that ranged from $SS = 96$-$133$ and wrote, "individuals with a learning disability are significantly more likely than those in the general population to have these discrepancy patterns." However, the practice of ascribing clinical and diagnostic meaning to a statistically significant discrepancy between Index and subtest scores on the WISC or WAIS has not received empirical support in the research literature for a variety of reason and has subsequently been discredited. In addition, the practice of interpreting any score that differs significantly from the highest score in an individual's profile as an impairment or deficit has not been supported empirically.
- In his report, Dr. Holmes wrote the following statement: "The strength of his other language functions is encouraging but may also result in others not readily recognizing his LD style." Here, I assume that he was referring to the differences, or discrepancies, in Kirk's test aptitude and achievement scores. However, I have never heard that term "LD style" nor did Dr. Holmes state explicitly what he meant by his use of the term.

RECEIVED
APR 3 0 2007
Disability Services

6

Overall, the available evidence shows that Kirk has the ability to achieve at an average or better level when he is compared to a representative sample of his same age peers from the general population. Based on the documentation, the data do not support the diagnoses of Reading Disorder, Disorder of Written Expression, and Learning Disorder Not Otherwise Specified nor provide justification for extended time on the USMLE Step 1 exam. Thus, it is my conclusion that the request for accommodations should be denied.

Sincerely,

Richard L. Sparks, Ed.D.

RECEIVED
APR 3 0 2007
Disability Services