# Joseph E. Bernier, Ph.D.

508 Pine West Plaza, Washington Avenue Extension, Albany, New York 12205 (518) 452-4232

Psychology

August 5, 2007

Confidential

Dr. Catherine Farmer
Office of Disability Services
National Board of Medical Examiners
3750 Market Street
Philadelphia, PA 19104-3102

Re: **Kirk D. Jenkins** (#5-194-442-9)

Dear Dr. Farmer,

I have completed my review of the documentation provided by and on behalf of the medical student identified above pertaining to his request for time and one-half on Step 1 of the *United States Medical Licensing Examination*. I have also reviewed letters to Mr. Jenkins written by Dr. Gregory Baker (12-07-2006) and yourself (Farmer, 05-18-2007) on behalf of the Board.

As you know, Mr. Jenkins has requested accommodations on the basis of childhood learning disorders affecting reading and writing that are said to be on going. His initial application for extra time was denied (Farmer, 05-18-2007) and he has since requested that the Board reconsider their decision in light of additional clarifying documentation and commentary (Jenkins, 06-18-2007).

After reviewing the entire set of materials, it seems to me that the major issue concerns whether or not Mr. Jenkins has demonstrated impairment by reference to the performance of the average person in his ability to take standardized written examinations in "real life" settings. I am not referring here to clinical tests of reading but rather to his performance upon timed tests that are within the experiences of the general population.

The clarifying documentation that the applicant provided in connection with his reconsideration request appears to document early reading, spelling, and writing difficulties that became the focus of special educational efforts and accommodations over the years (e.g., TeeGarden, 06-29-2007; Blevins, 07-06-2007; Colton, 01-21-2007). Perhaps the early interventions were beneficial as evidenced, for example, by above average reading and language scores on

RECEIVED
AUG 08 2007
Disability Services

EXHIBIT _E_

the *Comprehensive Test of Basic Skills* performed in April 1993 (5th grade). Nonetheless, problems in the area of reading proficiency or fluency seem to have persisted and are presently in evidence on clinical measures (e.g., Holmes, 01-15-2007; Holmes, 09-04-2003). Dr. Holmes used the *Woodcock Johnson-Third Edition* and *Wechsler Individual Achievement Test-Second Edition* respectively in these assessments. Contemporaries have noted the applicant's apparent use of additional time when performing academic activities (e.g., McClintock, 02-13-2007).

While much of the documentation, both new and old, seems focused upon substantiating the clinical diagnosis, the fact remains that the history does not demonstrate a pattern of impairment on the sorts of standardized tests (and formatted like the medical licensing examination) that are relevant to the lives of most people. Mr. Jenkins took the *PSAT/NMSQT* twice apparently under standardized timed conditions. In 1996, he earned average scores on the verbal and mathematics sections of the examination. He was in the 9th grade at the time. Mr. Jenkins then took the standardized test once again in 1998 (11th grade). This time he earned an average score on the verbal and mathematics subtests and a writing score that was above average. The applicant took the *ACT Assessment* four times in 1998 and 1999; the first three times under standardized conditions. His *overall* score was in the average range, in comparison to college-bound students, on each of these three administrations. A chart displaying his *subtest* percentile scores for the unaccommodated April and October 1999 administrations is displayed below.

|  | April 1999 Percentiles | October 1999 Percentiles |
|---|---|---|
| English Use / Mechanics | 92 | 86 |
| English Rhetoric | 83 | 95 |
| Reading Social Sciences | 50 | 37 |
| Reading Arts / Literature | 36 | 92 |
| Mathematics Elementary Algebra | 76 | 76 |
| Mathematics Alg / Geometry | 70 | 87 |
| Mathematics Geometry / Tri. | 74 | 83 |

These scores are all within the average or above average range and do not appear to give evidence of markedly impaired functioning. I was unable to obtain the subtest scores for the 1998 test.

In as much as the college admissions tests discussed above are closer to the experience of the general population, and that Mr. Jenkins performed as well as he did on them, one is hard pressed to conclude that his reading fluency problems are relevant for taking standardized written examinations. The documentation simply does not reveal pervasive impairment in the applicant's ability to perform timed written objective tests that are important in the lives of

RECEIVED
UG 0 6 2007
ability Services

most people. His achievement on these measures was at least on par with that of other high school students looking ahead towards college. Furthermore, the applicant's reading fluency problems notwithstanding, his performance upon these entrance examinations, which are part and parcel of the experiences of most high school students in this country, documents competence instead of severely limited or disabled functioning as this is conceptualized under the ADA.

I am therefore unable to support Mr. Jenkins' request for accommodated testing.

Sincerely,

Joseph E. Bernier, Ph.D.
Licensed Psychologist

RECEIVED

AUG 0 6 2007

Disability Services