UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:07-CV-698-H

KIRK D. JENKINS                                                                              PLAINTIFF

V.

NATIONAL BOARD OF MEDICAL EXAMINERS                                DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

Plaintiff Kirk Jenkins brought this action against Defendant National Board of Medical Examiners ("NBME"), requesting injunctive relief in the form of an order directing NBME to grant him time and a half to complete Step One of the U.S. Medical Licensing Examination ("USMLE"). Jenkins argues that under the Americans with Disabilities Act ("ADA"), he is entitled to such accommodation because he suffers from a condition that impairs his ability to read.

In light of the parties' core disagreement over whether Jenkins is "disabled" for purposes of the ADA, the Court and the parties agreed that resolution of that question would be dispositive as to the appropriateness of any relief, be it temporary, preliminary, or permanent,[1] and have proceeded accordingly. The Court has had the benefit of extensive briefing, testimony,

---

[1] A request for preliminary injunctive relief requires a court to consider and balance the following factors:
  (1) whether the movant has a "strong" likelihood of success on the merits;
  (2) whether the movant would otherwise suffer irreparable injury;
  (3) whether issuance of a preliminary injunction would cause substantial harm to others; and
  (4) whether the public interest would be served by issuance of a preliminary injunction.
*Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000). Though there is a difference between a "strong likelihood of success" and actual success, examination of the merits of a case is inherent in determining either. Furthermore, the evidence provided to prove a "strong likelihood of success" on the merits would, by the parties' admission, be the same as that offered to prove the merits themselves.

and argument by the parties, both via telephone and during a lengthy evidentiary hearing. For the reasons explained at greater length in open court and amplified here, the Court will deny Jenkins' motions. Moreover, because the Court has heard and considered all of the available evidence and because its decision on the pending motions amounts to a decision on the merits as a matter of law, the Court will consider this a final order.

I.

As is clear from the record, Jenkins does not read at the same rate as many, if not most people. Dr. John Lacy, a clinical psychologist who evaluated Jenkins in 2007, diagnosed Jenkins as suffering from a "reading disorder." This conclusion is generally in line with those reached by other doctors and examiners who have evaluated Jenkins throughout his life, including Drs. Michael Gontarz and David Holmes. The Court had the opportunity to hear extensive testimony from Jenkins, who also made it clear, more particularly, that he processed the written word at a slower rate than most. This condition has unquestionably made it more difficult for Jenkins to keep up with a rigorous medical school curriculum and to succeed on written tests where he is under time constraints, and it is a testament to Jenkins' effort and determination that he has done as well as he has in the demanding field he has chosen. Yet all of these observations are not dispositive for the particular purposes of the ADA.

A.

The ADA requires those subject to its terms, such as the NBME, to provide "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A). A "disability" is:

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B) a record of such impairment; or

(C) being regarded as having such an impairment.

*Id.* at § 12102(2). Therefore once a person proves he is impaired in some way, he must then prove that the impairment limits a major life activity, and does so substantially. *Toyota Motor Mfg. Kentucky, Inc. v. Williams*, 534 U.S. 184, 194–95 (2002). "Substantially" means considerably or to a large degree, and "major life activities" are those that are "of central importance to daily life." *Id.* at 196–97. In keeping with its admonition that "these terms need to be interpreted strictly to create a demanding standard for qualifying as disabled," *id.* at 197, the Court emphasized that the relevant standard for determining whether an activity is "of central importance to daily life" is whether it is "central to *most people's* daily lives." *Id.* at 201 (emphasis added).

Courts that have applied this standard to similar facts in the wake of *Toyota's* unanimous decision have determined that test-taking is not a "major life activity," and have emphasized the narrow definition of a "disability" imposed by the terms of the ADA and *Toyota*. *See, e.g., Singh v. Geo. Wash. Univ. Sch. of Med. & Health*, 508 F.3d 1097 (D.C. Cir. 2007); *Wong v. Regents of the Univ. of California*, 410 F.3d 1052 (9th Cir. 2005); *Baer v. Nat'l Bd. of Med. Exam'rs*, 392 F.Supp.2d 42 (D. Mass. 2005); *see also Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620 (6th Cir. 2000) (discussing these factors prior to *Toyota*). Furthermore, the

3

relevant comparison for purposes of determining disability is to "most people," not to one's own hypothetical unimpaired condition or to a chosen subset of one's peers, e.g. medical students. *Singh*, 508 F.3d at 1102–04; *see also Toyota*, 534 U.S. at 201.

Thus, Plaintiff did not seriously contest the Court's view that reading, not test-taking, was the relevant "major life activity," and that the significance of any impairment is measured in the context of an average person's life, rather than that of a medical student's life.

B.

Jenkins has presented substantial evidence that he is impaired in his ability to process the written word. Dr. Lacy testified at length on the subject, noting that Jenkins had performed below the mean (often well below the mean) on a variety of tests designed to ascertain a subject's reading abilities. Jenkins himself described the ways in which his condition affects his ability to import and comprehend words presented to him visually. But as stated in *Toyota*, "[i]t is insufficient for individuals attempting to prove disability status...to merely submit evidence of a medical diagnosis of an impairment." 534 U.S. at 199. Rather, such individuals must prove that "the extent of the limitation [caused by their impairment] in terms of their own experience...is substantial." *Id.* (internal citations omitted).

Thus counsel and the Court questioned Lacy and Jenkins on the issue of what "tasks central to most people's daily lives," *id.* at 200, Jenkins was unable or effectively unable to perform due to his condition. Jenkins told the Court he would have trouble reading street signs with similar names if forced to do so quickly, but offered no evidence that this precluded him from driving. Jenkins also noted his inability to read aloud in church at the same pace as other

4

congregants and his inability to watch movies with subtitles and most of the text scrolled at the bottom of television broadcasts. Yet when asked about activities seemingly more "central to most people's daily lives" such as reading the newspaper, reading a label on a food container, reading a menu in a restaurant, or reading correspondence from his attorney, Jenkins indicated that he was amply capable of doing so, albeit more slowly than others. Perhaps mindful of the remedy he seeks, Jenkins indicated that it might take him fifty percent longer to read those items that might confront him in daily life. However, he emphasized that when reading such things as medical texts, his pace slowed further given his lack of familiarity with many of the words used therein.

The Court repeatedly pressed Lacy, Jenkins, and Jenkins' counsel for examples of the "tasks central to most people's daily lives" Jenkins is unable (or effectively unable) to complete due to his condition, yet the examples noted above constituted the entirety of what was presented. Lacy indicated that the adversities experienced by Jenkins were entirely a function of his choice "to pursue a higher education," not a function of the demands of the daily life of most people. There is ample evidence that Jenkins processes written words slowly, and that this condition prevents him from succeeding where success is measured by one's ability to read under time pressure. But Jenkins' inability to identify meaningful "tasks central to most people's daily lives" that he is precluded from performing due to his condition must be fatal to his claim of disability under the ADA. *See Gonzales*, 225 F.3d at 629–30 (refusing to find someone who could read sufficiently well to accomplish academic success "substantially limited" in the ability to read); *Baer*, 392 F.Supp.2d at 47 (differentiating between "activities of daily life" and being "required to take standardized tests under regulated time pressure").

5

II.

Jenkins' ability to read is simply not "substantially limited" on the record before the Court, and indeed to some extent the very accommodation Jenkins requests reinforces this conclusion, since one who was truly "substantially limited" in his ability to read seemingly would need significantly more than time and a half to successfully process the undoubtedly complex and technical information on the USMLE.

As the D.C. Circuit noted, "[t]here is something poignant, in some cases even tragic, in the plight of a person cut off from exceptional achievement by some accident of birth or history. But the ADA is not addressed to that plight." *Singh*, 508 F.3d at 1101; see also *Gonzales*, 225 F.3d at 630 (noting that Congress intended the ADA to apply to a "severely disadvantaged group"). Here, Jenkins' impairment, however characterized, does not appear to substantially limit any major life activities, making it impossible to conclude that Jenkins is disabled for purposes of the ADA or entitled to the relief he seeks. The Court might add that based upon past experience, there seems a reasonable likelihood that Jenkins can overcome this obstacle as he has others.

Being otherwise sufficiently advised,

6

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Preliminary Injunctive Relief, Plaintiff's Motion for a Temporary Restraining Order, and Plaintiff's Complaint are **DISMISSED WITH PREJUDICE**.

This is a final and appealable order.

Date: February 8, 2008

cc:     Counsel of Record